AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent,

v.

Larry K. MOORE, Marsha Moore, and
Robert Mallett, Defendants,

Richard Dennis, Vicki Dennis, and
Renee Dennis, Appellants.

No. WD 50265.

Missouri Court of Appeals,
Western District.

Oct. 3, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 5, 1995.

Application to Transfer Denied
Jan. 23, 1996.

---

C. Robert Buckley, Independence, for appellants.

Paul Herbers, Andrew Jones, Kansas City, for respondent.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

HANNA, Presiding Judge.

This is an appeal from an order of the circuit court granting summary judgment in favor of American Family Mutual Insurance Company (American Family) in its declaratory judgment action to determine coverage under a homeowner's policy.

Ms. Marsha Moore had been providing after-school childcare in her home for Renee Dennis and her brother since September 1990. On March 27, 1991, Renee was bitten by the Moore's dog while Marsha Moore was babysitting at her home. Renee and her parents brought suit against Marsha Moore seeking damages for the child's injuries and medical expenses. At the time of the incident, Marsha and her husband, Larry Moore, were insured by a homeowner's policy issued by American Family. After being notified of the incident by the Moores, American Family filed a petition for a declaratory judgment seeking to establish that the "business pursuits" exclusion was applicable. Both sides moved for summary judgment. In March 1993, a summary judgment was entered against Marsha Moore and in favor of American Family.[1]

The appellants filed an amended petition against Marsha's husband, Larry, and her son, Robert Mallett, who was the owner of the dog and was living at the residence at the time of the incident. The amended petition alleged that they harbored and owned the

---

1. The case was appealed. This court affirmed the trial court's order granting summary judgment to American Family in a memorandum opinion dated March 1994. *American Family Ins. Co. v. Moore*, 876 S.W.2d 645 (Mo.App. 1994).

dog which had dangerous and vicious tendencies.

American Family filed a petition for declaratory judgment, claiming that the husband and son were also excluded under the "business pursuits" provision. The appellants argued that when the policy's severability and business exclusion clauses are read together, the policy terms are ambiguous. American Family filed a motion for summary judgment, which was sustained by the trial court. The appellants raise two points of trial error.

■ In order to prevail, the appellants must convince the court that the contract language is ambiguous; otherwise, the contract will be given its clear and unambiguous meaning. *Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991). Insofar as the contract may be open to different constructions, the interpretation most favorable to the insured will be adopted. *Dieckman v. Moran*, 414 S.W.2d 320, 321 (Mo.1967). However, this rule does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity when none exists. *Id.*

This court has previously determined that Marsha Moore was not covered under the homeowner's policy because of the business pursuits exclusion. *American Family Ins. Co. v. Moore*, 876 S.W.2d 645 (Mo.App.1994). However, in their first point, appellants contend that American Family is obligated to provide coverage to Larry and Robert because they were not engaged in a business pursuit at the time of the occurrence, and the severability clause requires that each insured be treated as having separate insurance coverage.

American Family argues that the policy language indicates that the parties intended that the business pursuits exclusion would operate as against any person insured under the policy. Specifically, it claims the use of the indefinite article "any" in the phrase "any insured" demonstrates an intent that the exclusionary clause would apply to all insured, including the husband and son, regardless of whether they were actually engaged in business pursuits at the time of the incident.

The business pursuits exclusion, in bold face type as in the policy, provides in pertinent part:

**Coverage D—Personal Liability and Coverage E—Medical Expense** do not apply to **bodily injury** or **property damage:**

\* \* \* \* \* \*

b. arising out of **business** pursuits of any **insured** ... by an **insured** except:

(1) activities which are usual to non-**business** pursuits;

Marsha Moore was performing babysitting services for hire at the time of the injury. This activity is a business under the terms of the policy and it is excluded under the policy. That is the law of this case. *American Family*, 876 S.W.2d at 645. *See also Union Mut. Ins. Co. v. Brown*, 809 S.W.2d 144, 145–46 (Mo.App.1991). The question becomes whether the exclusion is applicable to Larry and Robert in light of the severability clause of the policy. Specifically, our inquiry is whether the homeowners' severability of interests clause makes ambiguous the otherwise unambiguous language of the policy's exclusion for business pursuits.

■ All provisions of an insurance policy must be given their plain and reasonable meaning and, if possible, all parts should be harmonized and given effect in order to accomplish the intention of the parties. *Varble v. Stanley*, 306 S.W.2d 662, 665 (Mo.App. 1957). "[I]f the terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly against the insurer." *Id.* at 665. Any ambiguities must be construed in favor of the insured. *Shelter Mut. Ins. Co. v. Brooks*, 693 S.W.2d 810, 812 (Mo. banc 1985).

In *Brooks*, the Missouri Supreme Court considered the effect of a severability clause on an exclusionary provision contained in an automobile insurance policy. The insurance policy used "*the* insured" in the exclusionary clause. The court discussed the meaning of "the insured" and the significance of the modifiers "the", "an", and "any" when used in the policy. The court determined that the

use of "the" in the exclusionary clause was grammatically ambiguous when read in light of the severability clause. The court stated:

> If the article "the" is combined with the plural "insured" it clearly would encompass all insured under the policy. *If on the other hand it is combined with the singular "insured" it speaks to a specific insured rather than all members of the class wherein the terms "an insured" or "any insured" are more properly utilized.*

*Id.* at 812 (emphasis added). The court suggested that the use of either of the latter two words (an or any) would have precluded coverage under the exclusionary clause. Because the exclusion used the modifier "the" instead of "an" or "any," the exclusion could arguably refer to either any insured or only the insured claiming coverage. *Id.* Construing the ambiguities against the insurer, the court held that the exclusion referred only to the insured claiming coverage. *Id.*

The business pursuits clause in American Family's policy employs the phrases "any insured" and "an insured." Appellants argue that a closer look is required of the language in *Brooks.* They cite cases in other jurisdictions which have discussed the severability clause in conjunction with the business pursuits of *any* insured. *Premier Ins. Co. v. Adams,* 632 So.2d 1054 (Fla.Dist.Ct.App. 1994); *Worcester Mut. Ins. Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158 (1986). These courts acknowledged that the meaning of "any" is clear, but that such an interpretation would render the severability clause meaningless. *Premier,* 632 So.2d at 1057; *Worcester,* 496 N.E.2d at 161. American Family, on the other hand, cites cases from a number of foreign jurisdictions that have held that the term "any" in an exclusionary clause would mean all insured claiming under the severability clause. *See, e.g., Thoele v. Aetna Casualty & Surety,* 39 F.3d 724, 727 (7th Cir.1994); *Chacon v. American Family*

*Mut. Ins. Co.,* 788 P.2d 748, 751–52 (Colo. 1990). There is no uniformity in the results.[2]

Our decision rests on the defined words in the policy. Under the "Insuring Agreement," the policy section of "[d]efinitions," in bold face type as in the policy, states:

**The following words in this policy have defined meanings. They will be printed in bold type.**

1. **You** and **your** refer to the person or people shown as the named **insured** in the declarations. These words also refer to **your** spouse who is a resident of **your** household. . . .

2. **Insured**

   a. **Insured** means **you** and **your** relatives if residents of **your** household. It also means any other person under the age of 21 in **your** care or in the care of **your** resident relatives.

The severability clause states:

   d. Each person described above is a separate **insured** under this policy. This does not increase **our limit.**

█ If a term within an insurance policy is clearly defined, the contract definition controls. *State Farm Mut. Auto. Ins. Co. v. Ballmer,* 899 S.W.2d 523, 525 (Mo. banc 1995). "Insured" is printed in bold type. It is a defined word. Under the terms of the policy, Larry and Robert are insured. Larry and Marsha are named insured and Robert is an insured by virtue of the policy's definition of a relative who is a resident of the household and under the age of 21. The meaning of "any insured" in the business exclusion includes the defined insured, Larry and Robert. *See id.,* at 526. Because an insurance contract is an agreement between parties that should be interpreted in a manner consistent with the expressions therein, the policy before us unambiguously expresses an intention to deny coverage to all insureds when damage is the result of a business pursuit. The purpose of the severability

---

**2.** Missouri courts have considered the effect of a severability clause on other exclusionary provisions. We have located no Missouri cases which have considered the effect of a severability clause on a business pursuits exclusion. *See, e.g., Baker v. DePew,* 860 S.W.2d 318 (Mo. banc 1993) ("fellow employee" exclusion); *Shelter Mut. Ins. Co.*

*v. Brooks,* 693 S.W.2d 810 (Mo. banc 1985) (exclusion in automobile policy utilizing phrase "the insured"); *Short v. Safeco Ins. Co.,* 864 S.W.2d 361 (Mo.App.1993) ("fellow employee" exclusion); *Bituminous Casualty Corp. v. Aetna Life & Casualty Co.,* 599 S.W.2d 516 (Mo.App.1980) (employee exclusion).

clause is not to negate the plainly worded meaning of the business exclusion clause.

In the appellants' second point, they argue that because Larry and Robert were not engaged in a business pursuit, they fall within the exception to the business pursuits exclusion, which covers "activities which are usual to non-business pursuits." Appellants maintain that keeping and owning a dog are non-business pursuits. Here, the defendants pleaded that Larry and Robert owned and kept a dog with vicious propensities. There was deposition testimony and affidavits concerning the dog's vicious character and the court found that the dog was taught to engage in prey behavior and to be aggressive and dominant and had dangerous propensities with a tendency to injure persons out of anger.

This exception to the business pursuit policy language has been held to be unambiguous. *Dieckman*, 414 S.W.2d at 321. In *Dieckman*, the court held that the intent of the parties was clear: "[B]usiness pursuits of the insured are excluded, except activities therein which are ordinarily incident to non-business pursuits." *Id.* at 322.

Missouri day care cases have addressed this exception of activities which are usual to nonbusiness pursuits. *See, e.g., Maryland Casualty Co. v. Hayes*, 827 S.W.2d 275 (Mo. App.1992); *Safeco Ins. Co. v. Howard*, 782 S.W.2d 658 (Mo.App.1989).

In *Hayes*, Mrs. Hayes provided babysitting services for two children of the Hills. While Mrs. Hayes was in the kitchen preparing tea for herself and oatmeal for one of the children, she spilled boiling water on the other child who was playing on the floor. Mrs. Hayes' policy had the standard business pursuits exclusion and the exception for non-business activities. The court held that the business pursuits exclusion applied and the exception did not. 827 S.W.2d at 278. Mrs. Hayes allowed the child to be in the vicinity of her activities in pouring hot water, thereby invoking the exclusionary clause, and her alleged negligence in failing to supervise was a simultaneous activity with the pouring of hot water. *Id.* The court also concluded that the preparation of lunch was contemplated by the parties as part of her services.

*Id.* Finally, the court stated that the injuries occurred as a direct result of both her failure to supervise and her preparation of food for the child. *Id.*

In the *Howard* case, Mrs. Howard operated a babysitting service, and her teenage son lived at home. The son was charged with and convicted of molesting several of the young children who were under his mother's care. The parents charged Mrs. Howard with failure to supervise their son. Safeco's policy excluded bodily injury arising out of business pursuits except for activities which were ordinarily incident to non-business pursuits. The issue was whether the exception nullified the exclusion. The court held that the activity was Mrs. Howard's failure to supervise her son, which was ordinarily incident to the day care service and not ordinarily incident to non-business pursuits. 782 S.W.2d at 659–60. The court stated that the work of Mrs. Howard was wholly unconnected with her family responsibilities because she had no young children of her own. *Id.* at 659.

Also, in *Martinelli v. Security Insurance Co.*, 490 S.W.2d 427 (Mo.App.1973), Martinelli was injured by his co-worker, Engel, who was walking and bumped into him while walking on the business premises during working hours. At the time, Engel had a homeowner's policy in force. While walking and bumping into another is ordinarily a non-business activity, the court defined the activity not as the isolated act of walking or bumping, but instead as doing so in furtherance of the employer's work. *Id.* at 432. Therefore, the exception did not apply and the co-worker's claim was excluded under the homeowner's policy. *Id.*

■ The appellants argue that keeping a dog is ordinarily a non-business activity. But not every activity which is a non-business pursuit requires coverage. *Id.* at 432. To be an exception to the exclusionary clause, the activity must be one that is usually incident to non-business pursuits.

■ Owning or harboring a dog may be an activity usually incident to a non-business pursuit, but the policy exception focuses on the activity which caused the injury. The

dog was kept in the home while childcare services were being performed. The introduction of the dog with vicious propensities into the babysitting environment and in close proximity to small children, who were on the premises pursuant to a business pursuit, cannot be said to be an activity incident to a non-business pursuit.

The judgment of the trial court is affirmed.

All concur.