966 P.2d 1099

ARMED FORCES INSURANCE
EXCHANGE, Plaintiff,

v.

TRANSAMERICA INSURANCE
COMPANY, Defendant–
Appellee,

and

Bernard Sagawa; Commercial Union In-
surance Company of Hawaii, Inc.; Bish-
op Insurance of Hawaii, Inc.; Pacific In-
surance Company, Ltd., and Acceptance
Insurance Company, Defendants,

and

Jane Does One Through Eleven,
Intervenors–Appellants.

No. 21183.

Intermediate Court of Appeals of Hawai'i.

Sept. 16, 1998.

Sakamoto), on the brief for defendant-appellee.

BURNS, C.J., ACOBA, J., and Circuit Judge DEL ROSARIO in place of WATANABE, J., Recused,

ACOBA, Judge.

We hold herein that the exclusion for activities arising out of business pursuits as applied to personal liability coverage in the homeowner's insurance policy issued by Defendant–Appellee TIG [1] (TIG) refers to "activities which are conducted on a regular basis for the purposes of earning income, profit, and as a means of livelihood." 9 L. Russ & T. Segalla, *Couch on Insurance*, § 128:13, at 17–18 (3d ed.1997) (footnote omitted) [hereinafter *Couch* ]. We conclude that the question of whether "a given activity constitutes a business pursuit ... is determined by the facts of the individual case[.]" *Id.* at 128–19 (internal quotation marks omitted). We also conclude that the question of whether an exception for "activities usual to non-business pursuits" applies to the business pursuit exclusion must be determined on a case-by-case basis.

We hold, further, that the business pursuit exclusion in TIG's insurance policy applied and the exception to that exclusion did not apply to the factual allegations in the complaint filed by Intervenors–Appellants Jane Does One through Eleven (collectively Appellants) for personal injuries against Defendant Bernard Sagawa (Sagawa). Therefore, we determine there was no duty on TIG's part to defend or indemnify its insured, Sagawa, from the claims in Appellants' complaint.

Gary O. Galiher, L. Richard DeRobertis, Derek S. Nakamura, Jeffrey T. Ono, Anthony P. Takitani, and Diane T. Ono (Galiher, DeRobertis, Nakamura, Ono, Takitani), on the briefs for intervenors-appellants.

J. Patrick Gallagher, Wayne S. Sakamoto, Joelle Segawa Kane, Leonard R. Gouveia, Jr., and Ryan K. Harimoto (Gallagher &

I.

A.

On or about March 18, 1995, Appellants named Sagawa and the Hawaii Housing Authority (HHA) as defendants in a personal injury action filed in the first circuit court (the court) and designated as "Jane Does One through Eleven v. Sagawa, et al.," Civil

1. Defendant TIG Insurance Company (TIG) was incorrectly named in the case caption as Trans-america Insurance Company.

No. 95–0890–03 (the underlying action).[2] In their first cause of action, Appellants alleged that Sagawa entered their respective homes under the pretext of conducting a housing inspection and, while in their homes, committed various forms of sexual harassment and assault against them, and inflicted intentional and negligent emotional distress on them. Appellants maintained that at the time of the alleged incidents, Sagawa was an employee of HHA and "acting under color of law and under the authority of [HHA] when he entered each [Appellant's] home." In addition, Appellants claimed that Sagawa's conduct was "motivated by malice or otherwise represented an abuse of his office."

Thus, HHA, Appellants alleged, was liable for the conduct of Sagawa under theories of negligence, respondeat superior, and vicarious liability. Finally, Appellants asserted as other causes of action against both Sagawa and HHA, civil rights violations and invasion of privacy.

### B.

Subsequently, on April 9, 1996, Armed Forces Insurance Exchange (Armed Forces), the carrier on one of Sagawa's homeowner's insurance policies, filed a complaint for declaratory judgment against Sagawa and his other homeowner's insurance policy carriers,

TIG, Commercial Union Insurance Company of Hawaii, Inc. (Commercial Union), Bishop Insurance of Hawaii, Inc. (Bishop Insurance), Pacific Insurance Company, Ltd. (Pacific Insurance), and the liability insurer for HHA, Acceptance Insurance Company (Acceptance Insurance). Armed Forces maintained that, under the terms of the homeowner's policy it issued to Sagawa, it did not owe a duty to defend and/or indemnify Sagawa in Appellants' underlying action.

Armed Forces further alleged that TIG, along with Commercial Union, Bishop Insurance, and Pacific Insurance, provided Sagawa with homeowner's insurance coverage during the relevant period and owed a duty to defend Sagawa.

### C.

On May 1, 1996, Armed Forces moved for partial summary judgment against Sagawa only. In its summary judgment motion, Armed Forces argued that its policy excluded "bodily injury or property damage which is expected or intended by the insured [ (the intentional acts exclusion) ] or that arises out of an insured's 'business pursuits.' " In addition, Armed Forces maintained that Sagawa's alleged wrongful conduct did not constitute an insurable "occurrence" within the meaning of the Armed Forces' policy.[3]

2. From the record, it appears that the personal injury civil action filed in the first circuit court (the court) by Intervenors–Appellants Jane Does One Through Eleven (collectively Appellants) against Defendants Bernard Sagawa (Sagawa) and the Hawaii Housing Authority (HHA) (the underlying action) is still pending.

A separate personal injury action was filed against Sagawa by two other individuals. That suit is designated "Jane Roe One and Jane Roe Two v. Sagawa, et al.," Civil No. 95–3099–08 (the Jane Roe action). The Jane Roe action ostensibly asserts similar claims as the underlying action. However, that action is not before us and we do not address issues related to possible coverage of the Jane Roe action.

3. The relevant portions of the insurance policy of Plaintiff Armed Forces Insurance Exchange (Armed Forces) are as follows:

**DEFINITIONS**

1. "**bodily injury**" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "**business**" includes trade, profession or occupation.

. . . .

5. "**occurrence**" means an accident, including exposure to conditions, which results, during the policy period, in:

a. **bodily injury;** or

. . . .

**SECTION II—LIABILITY COVERAGES**
**COVERAGE 3—Personal Liability**
If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** . . . caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. . . .

. . . .

**SECTION II—EXCLUSIONS**

1. [Personal Liability Coverage does] not apply to **bodily injury** . . . :

. . . .

b. arising out of **business** pursuits of an **insured**. . . .

This exclusion does not apply to:

On May 24, 1996, Appellants moved to intervene as defendants in Armed Forces' declaratory judgment action.

On July 12, 1996, Appellants filed their memorandum in opposition to Armed Forces' summary judgment motion,[4] arguing that Sagawa was not engaged in business pursuits within the meaning of the Armed Forces' policy, the intentional acts exclusion to the Armed Forces' policy did not apply, and the declaratory judgment action should be stayed pending the outcome of the underlying action.

### D.

On July 17, 1996, a hearing was held on Armed Forces' summary judgment motion and on October 9, 1996, the court presiding over Armed Forces' motion (the first motions court) entered an order granting it, as follows:

1. [T]here are no genuine issues of material fact relevant to [Armed Forces' motion for summary judgment] and [Armed Forces] is entitled to judgment as a matter of law.

2. The [c]ourt adopts the analysis of the policy language as contained in [Armed Forces' motion for summary judgment] including the definitions of occurrence, *business pursuits* and intentional acts.

3. The [c]ourt further adopts the analysis in [Armed Forces' motion for summary judgment] regarding the law in Hawai'i and other jurisdictions on similar language. . . .

(Emphasis added.)

On October 31, 1996, the court dismissed Bishop Insurance, Commercial Union, and Acceptance Insurance from the Armed Forces declaratory action, for want of service.

On February 28, 1997, Armed Forces entered into a stipulation dismissing without prejudice all of its claims against the remaining parties, TIG, Pacific Insurance, and Appellants.

### II.

### A.

With respect to TIG's declaratory judgment action, TIG filed cross-claims for declaratory judgment against Sagawa, Commercial Union, Bishop Insurance, Pacific Insurance, and Acceptance Insurance on July 25, 1996.

On September 10, 1996, TIG filed its motion for partial summary judgment against Sagawa only. TIG argued that it need not defend and/or indemnify Sagawa in the underlying action because the TIG policy, like the Armed Forces policy, excluded coverage for injury that arose out of an insured's business pursuits or was "expected or intended by the insured." In addition, like Armed Forces, TIG argued that Sagawa's alleged wrongful conduct did not constitute an insurable "occurrence" within the meaning of the TIG policy.[5]

On September 19, 1996, TIG filed a supplemental memorandum in which it argued that the language of the Armed Forces policy and the TIG policy were "virtually identical." TIG further maintained that the "law of the case" doctrine required that the judge hearing the TIG summary judgment motion "respect [the first motions court's] earlier [o]rder and similarly grant partial summary judgment in favor of [TIG]."

Appellants filed their memorandum in opposition to TIG's summary judgment motion on October 7, 1996.

### B.

On October 11, 1996, a hearing was held on TIG's summary judgment motion. By order

(1) activities which are usual to non-**business** pursuits[.]
(Boldfaced emphases in original.)

**4.** On June 19, 1996, Appellants' motion to intervene was orally granted. The written order granting Appellants' motion to intervene was entered on July 15, 1996.

**5.** On September 18, 1996, Defendant Pacific Insurance Company, Ltd. (Pacific Insurance) filed its motion for partial summary judgment against Sagawa on the same grounds as TIG.

dated March 18, 1997, another judge [6] (the second motions court) granted TIG's summary judgment motion.[7]

In its order granting TIG's motion for summary judgment against Sagawa, the second motions court held:

> 1. But for the timing and service of the [pleadings in the declaratory judgment action], [TIG's summary judgment motion] would have been joined, filed and heard at the same time as [Armed Forces' summary judgment motion]. . . .
>
> 2. *The [c]ourt finds that the same ruling entered in the [Armed Forces' summary judgment motion] would have been entered in favor of TIG* . . . .
>
> 3. *Therefore, under either the doctrine of law of the case or by entry of Order nunc pro tunc, the [c]ourt grants [TIG's summary judgment motion]* consistent with the ruling of [the first motions court] in [Armed Forces' summary judgment motion] and the [c]ourt thereby incorporates . . . [the] ruling entered October 8, 1996, herein. . . .

(Emphasis added)

On August 4, 1997, Appellants moved under Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) for certification of final judgment in favor of TIG and against Sagawa and themselves. Appellants' motion requested certification against themselves "so that Intervenors [Appellants could] perfect an appeal from the order granting TIG's motion for partial summary judgment."

6. Different judges presided over the summary judgment motions of Armed Forces and TIG/Pacific Insurance.

7. On March 18, 1997, the second motions court also granted partial summary judgment against Sagawa and Appellants and in favor of Pacific Insurance. Appellants, however, only appeal the partial summary judgment awarded to TIG.

8. On December 4, 1997, the court also entered final judgment in favor of Armed Forces and Pacific Insurance and against Sagawa and Appellants.

9. The duration of TIG's policy cannot be ascertained from the record; the copies of the policies attached to TIG's brief are illegible. The copies of the policies attached to TIG's summary judg-

On December 4, 1997, the court entered final judgment in favor of TIG and against Sagawa and Appellants.[8] Appellants appealed on December 8, 1997.

### III.

A summary judgment order is reviewed on appeal under the same standard applied by the trial court. *State v. Tradewinds Elec. Serv. and Contracting, Inc.,* 80 Hawai'i 218, 222, 908 P.2d 1204, 1208 (1995). Accordingly, summary judgment is appropriate where viewing all evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party clearly demonstrates that the party is entitled to judgment as a matter of law. *Id.;* HRCP Rule 56(c).

The relevant facts are not in dispute: (1) Appellants' complaint against Sagawa and HHA alleged various injuries were sustained by them when Sagawa entered their homes in connection with HHA inspections; (2) the TIG policy was in effect during the time of Sagawa's alleged wrongful conduct;[9] and (3) Appellants and TIG agree on the policy language of the TIG policy as quoted herein. The issue on appeal, therefore, is whether the second motions court was correct in concluding that judgment should enter in favor of TIG as a matter of law.

### IV.

On appeal, Appellants argue that (1) the business pursuits exclusion did not apply; (2) the intentional act exclusion did not apply; (3) claims for invasion of privacy are afforded

ment motion are legible, but they were not properly sworn to or certified. *See Tradewind Ins. Co. v. Stout,* 85 Hawai'i 177, 181, 938 P.2d 1196, 1200 (App.), *cert. denied,* 85 Hawai'i 81, 937 P.2d 922 (1997).

However, Appellants have not objected to the characterization of the time limitations on the policy or to the general language of the policy. In fact, both parties referred to the policy language in their court memoranda and on appeal. Accordingly, we assume, as stated in the policy attached to TIG's summary judgment motion, that TIG's policy was only in effect for the period from June 29, 1985 to June 29, 1989. *See Kutcher v. Zimmerman,* 87 Hawai'i 394, 399, 957 P.2d 1076, 1081 (App.1998).

coverage; and (4) the second motions court erred in granting summary judgment based on the "law of the case" which was purportedly established when summary judgment was granted on the Armed Forces policy.

On the other hand, TIG asserts, *inter alia,* that the policy's business pursuits exclusion bars coverage of all the claims made in the underlying action. We agree that the business pursuits exclusion precluded indemnification of Appellants' claims under the personal liability coverage provisions of Sagawa's homeowner's policy. Therefore, we hold that TIG did not have a duty to defend Sagawa in the underlying action but we do so for reasons different than those cited by the second motions court.[10] Under our disposition of the case, we need not reach the other arguments raised by Appellants.

### V.

■ Because the "duty to defend [and to indemnify] is limited [ordinarily] to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract[,]" we examine Appellants' complaint in light of the insurance policy terms. *Hawaiian Holiday Macadamia Nut Co. v. Industrial Indem. Co.,* 76 Hawai'i 166, 169, 872 P.2d 230, 233 (1994). Where the pleadings raise a claim for relief covered by the insurance policy, the insurer must defend the entire suit. *See, e.g., Commerce & Indus. Ins. Co. v. Bank of Hawaii,* 73 Haw. 322, 326, 832 P.2d 733, 735, *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992); *Standard Oil Co. of California v. Hawaiian Ins. & Guar. Co.,* 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982). Conversely, where the pleadings "fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." *Bayudan v. Tradewind Ins. Co.,* 87 Hawai'i 379, 383, 957 P.2d 1061, 1065 (App.1998) (internal quotation marks, citations, and emphasis omitted).

### A.

Under that part of Section II entitled "Liability Coverages," the TIG policy provided personal liability coverage for Sagawa under the following terms:

### COVERAGE E—PERSONAL LIABILITY

<u>If a claim is made or a suit brought against an insured for damages because of</u> **bodily injury, personal injury,** or **property damage** caused by an **occurrence** to which this coverage applies, <u>we will</u>:

1. Pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. <u>Provide a defense at our expense</u> ... even if the suit is groundless, false or fraudulent. . . .

(Boldfaced emphases in original; underscored emphases added.)

The "Definitions" section of the TIG policy provided the following:

1. **"Bodily injury"** <u>means bodily harm, sickness</u> or disease, including required care, loss of services and death that results.

2. **"Personal injury"** means any injury arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment or malicious prosecution; or

   b. Libel, slander or defamation of character; or

   c. <u>Invasion of privacy,</u> wrongful eviction or wrongful entry.

   . . . .

6. **"Occurrence"** means an accident, including exposure to conditions, which results, during the policy period, in:

   a. **Bodily injury;**

   b. **Personal injury;** or

   c. **Property damage.**

(Boldfaced emphases in original; underscored emphases added.)

Based upon the foregoing, a defense was ostensibly afforded Sagawa under the TIG policy for Appellants' claims of sexual assault

---

10. Accordingly, we do not address Appellants' argument that the second motions court erred in ruling that the law of the case doctrine applied or that an order nunc pro tunc should enter.

and harassment and infliction of emotional distress under the definition of bodily injury, and of invasion of privacy under the definition of personal injury.

However, under that part of Section II entitled "Exclusions," the following limitation was imposed on the personal liability coverage:

1. **Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury, personal injury**, or **property damage:**

   a. Which is expected or intended by the **insured;**

   b. Arising out of **business** pursuits of an **insured** . . . .

   This exclusion does not apply to:

   (1) Activities which are usual to non-**business** pursuits [.]

   . . . .

2. **Coverage E—Personal Liability,** does not apply to:

   . . . .

   g. **Personal injury** arising out of business pursuits of any insured [.]

(Boldfaced emphases in original; underscored emphases added.) The TIG policy defines the term "business" as including a "trade, profession or occupation." However, the term business pursuits is not expressly defined in the TIG policy.

### B.

Initially, we observe that in arguing that the business pursuits exclusion in Section II, subsection 1(a) of the policy does not apply, or in mentioning that the exception in subsection 1(b) to the exclusion applies, Appellants cite to several cases in other jurisdictions which involved "practical jokes" or pranks occurring at the workplace. In their opening brief, Appellants speculate that Sagawa "may very well consider these [alleged] activities to have been 'pranks' and [he] may very well contend that he was not on [HHA] business but only pretending to be when he was at [Appellants'] homes." This argument, however, is pure conjecture. From the record, it appears that Sagawa has not argued that the alleged wrongful conduct was a prank or in any way separate from his employment with HHA. Under these factual allegations, we do not find the cases focusing on pranks at the workplace pertinent to Appellants' complaint.

### VI.

### A.

Turning to the business pursuits exclusion, Appellants argue that under language similar to that in the TIG policy, the Minnesota Supreme Court held that the business pursuits exclusion in a homeowner's policy did not apply where the insured struck the injured party, even though the insured was acting in the course of his employment. *Farmers Ins. Exch. v. Sipple*, 255 N.W.2d 373, 375 (1977). In *Sipple*, the insured, Baud, was employed as a state highway technician. *Id.* at 374. Baud visited Sipple, a local farmer, to discuss complaints regarding construction of a state highway. *Id.* During the course of the meeting, Baud and Sipple became involved in a heated discussion and Baud struck Sipple. *Id.* The Minnesota Supreme Court concluded that Baud's homeowner's policy insurer had a duty to defend Baud, reasoning that the "assault arose out of a business setting; however, the assault sought to be excluded by the business pursuits clause was not *an act peculiar to the business activities* of the insured." *Id.* at 375 (emphasis added).

We do not find *Sipple* dispositive. As one court has said, "It would be difficult to imagine just what activities could be characterized as 'peculiarly business activities' given the broad spectrum of endeavors in which a homeowner can engage for either business or non-business reasons." *Thoele v. Aetna Cas. & Sur.*, 39 F.3d 724, 730, n. 4 (7th Cir.1994).

### B.

■ On the other hand, it has been generally agreed that "[t]he phrase 'business pursuits' [as used in homeowners' policies] refers to activities which are conducted on a regular or continuous basis, for the purpose of earning income, profit, or as a means of livelihood." *Couch, supra*, § 128:13, at 17–18 (footnote omitted). Thus, many courts have

adopted a two-part test for determining whether an activity constitutes a business pursuit. Under that test, "both (1) a continuity or recurrent character [of the activity],[11] ] and (2) a profit motive" must exist. *Id.* at 18 (footnote omitted).

■ Further, "the question of whether a given activity constitutes a 'business pursuit,' within the meaning of a policy exclusion, is determined by the facts of the individual case, particularly the nature of the activity, and its connection to the liability in question." *Id.* at 19. "Whether an activity is a business pursuit is almost always a factual question presented for the determination by a court." 7A J. Appleman & W. Berdal, *Insurance Law and Practice,* § 4501.10, at 273 (1978). Cases involving the business pursuit exclusion, therefore, must be decided on a case-by-case basis.

We find *Greenman v. Michigan,* 173 Mich. App. 88, 433 N.W.2d 346 (1988), relevant. There, an employee sued Greenman, the insured, and his law firm, for sexual harassment and discrimination. *Id.,* 433 N.W.2d at 348. The allegations in the underlying complaint there were similar to the claims brought by Appellants against Sagawa; the employee alleged that Greenman had made "unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct and communication of a sexual nature" and that the insured's conduct was "willful, malicious and intentional." *Id.*

The Michigan Court of Appeals stated that a "business pursuit is an activity engaged in continuously and for profit." *Id.,* 433 N.W.2d at 349. Because the complained-of acts occurred at the law firm where Greenman and the employee worked and "activities of the law firm were continuous and for profit," *id.,* the appellate court held that the acts were done in Greenman's business pursuits and thus came within the business pursuits exclusion.

Similarly, in *Frankenmuth Mut. Ins. Co. v. Kompus,* 135 Mich.App. 667, 354 N.W.2d 303 (1984), the Michigan Court of Appeals applied the business pursuits exclusion where the alleged acts took place during the performance of the insured's occupation. There, former patients of Kompus, a psychiatrist, brought actions for assault, malpractice, and other claims. *Id.,* 354 N.W.2d at 305–06. These claims were based on alleged homosexual acts committed by Kompus under the guise of therapy. *Id.* Kompus had homeowner's policies with Aetna Life & Casualty Company (Aetna) and Frankenmuth Mutual Insurance Company (Frankenmuth). *Id.,* 354 N.W.2d at 306. The lower court held that under the exclusion for business pursuits in the homeowner's policies,[12] Aetna and Frankenmuth had no duty to defend Kompus, because "[w]ithout exception, the acts complained of occurred during a doctor/patient relationship." *Id.,* 354 N.W.2d at 307–08. On appeal, Kompus's former patients argued that the trial court erred in concluding that the insurers had no duty to defend. *Id.*

The appellate court responded that "under the two-pronged test for business pursuits [continuity and profit motive], the acts complained of in the [former] patients' complaints did arise out of the business pursuits of Kompus." *Id.,* 354 N.W.2d at 308. In reaching this conclusion, the court explained:

Here, [Kompus's] relationship with each of the [former] patients clearly began as doctor/patient.... *Kompus was able to commit the complained-of acts apparently only because of the trust reposed in him as doctor by his patients ....* [I]t is clear that the relationships began as ones involving profit, with the parties expecting Kompus to be paid.... We are unwilling to say that the profit requirement of the business pursuits test may be satisfied only if the individual complained-of acts were themselves specifically performed for prof-

11. The term "continuity" refers to a "customary activity or stated occupation." 9 L. Russ & T. Segalla, *Couch on Insurance,* § 128:13, at 18 (3d ed.1997) [hereinafter *Couch* ].

12. The exact text of the "business pursuits" exclusion in the homeowner's policies issued to Kompus by Aetna Life & Casualty Company and

Frankenmuth Mutual Insurance Company is not reproduced in the opinion. The Michigan Court of Appeals simply referred to the "business pursuits" exclusion throughout the opinion. *Frankenmuth Mut. Ins. Co. v. Kompus,* 135 Mich.App. 667, 354 N.W.2d 303 (1984).

it on an act-by-act basis. *The test is not so narrow. We interpret it instead to require that the acts be performed as part of the business or service normally performed by the insured for profit, [i.e.], the business pursuit of the insured . . . .*

*Id.,* 354 N.W.2d at 308–09 (emphases added).

Cases from other jurisdictions involving the application of the business pursuits exclusion to alleged work-related accidents have similarly interpreted the scope of the business pursuits exclusion. *See e.g., Martinelli v. Security Ins. of New Haven,* 490 S.W.2d 427, 432 (Mo.Ct.App.1972) (holding that the activity of "walking" or "bumping" fell within the business pursuits exclusion where an employee injured a fellow employee while engaged in an activity "associated with or related to the insured's business pursuits"); *Berkshire Mut. Ins. Co. v. La-Chance,* 115 N.H. 487, 343 A.2d 642 (1975) (holding that the business pursuits clause excludes coverage for accidents occurring "when the insured is engaged in his regular employment"); *Maryland Cas. Co. v. Farmers Alliance Mut. Ins. Co.,* 566 P.2d 168, 169 (Okla.Ct.App.1977) (holding that a carpenter was acting within his business pursuits when he connected a propane gas line to provide heat while he worked and then lit a cigarette which caused an explosion); *Transamerica Ins. Co. v. Preston,* 30 Wash.App. 101, 632 P.2d 900, 903 (1981) (holding that under the business pursuits exclusion, the insurer owed no duty to defend where underlying action alleged that insured was a locomotive operator and accident occurred while insured was operating locomotive); *Northwestern Nat. Ins. Co. v. Dennis,* 638 F.Supp. 867, 870 (W.D.Ark.1986) (holding no coverage under the business pursuits exclusion where the insured, a maintenance worker at a school, was mowing the school's lawn and a rock hurled from the mower injured a student).

### C.

■ Applying the two-part test to Appellants' pleadings, it is evident that Saga-

wa's position with HHA constituted a "business pursuit" within the terms of the policy. He was employed with the HHA. His employment was apparently recurrent and was for the purpose of earning income. He was engaged in the conduct of his occupational duties at the time of the alleged acts. According to Appellants' complaint, he was apparently only able to commit the complained-of acts because of the inspections performed as a part of his employment.[13]

### VII.

Appellants maintain that the business pursuits exclusion did not encompass the specific acts alleged such as "touching Jane Doe One's breast and genital areas" [sic] because such acts were not "a business pursuit." As to this argument, we have determined that Sagawa was engaged in a business pursuit at the relevant times. While Appellants do not specifically argue that Sagawa's "activity" was "usual to non-business pursuits" and therefore within the exception to the business pursuits exclusion, their emphasis on the specific acts of Sagawa implicates that exception.

■ The terms "usual" and "non-business pursuits" are not defined in TIG's policy. We thus apply the rule that "[i]nsurance policies are subject to the general rules of contract construction," and hence "the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended[.]" *First Ins. Co. of Hawaii v. State,* 66 Haw. 413, 423–24, 665 P.2d 648, 655 (1983) (citation omitted). Construing its language in the ordinary sense, we do not believe the exception applies. The plain, ordinary, and accepted meaning of the word "usual" is as follows:

[A]ccords with usage, custom, or habit . . . commonly or ordinarily employed . . . oc-

---

**13.** Appellants argue that there is an apparent inconsistency in the TIG policy language because the personal injury coverage arguably applies to intentional torts such as libel, slander, defamation, etc., but the policy defines an insurable

"occurrence" as an accident and further excludes coverage for an insured's intentional acts. We decide this case under the business pursuits exclusion, and therefore we need not decide the merits of Appellants' arguments in this regard.

curs in ordinary practice or in the ordinary course of events ... happens frequently in the normal course of events and lacks any strangeness.

*Webster's Third New International Dictionary* 2524 (1981). We do not believe the acts of sexual assault and harassment and the collateral effects complained of would be considered "usual" in the sense that it is expected they would occur in the ordinary course of events or normal course of events of non-business activities. Furthermore, the activity involved here, that of housing inspections, was not, as pleaded, a non-business activity, but was performed as part of Sagawa's employment.

## VIII.

Additionally, we believe the exception would not apply under the rationale of pertinent case law. An exception for activities "usual to" or "ordinarily incident to" an insured's "non-business pursuits" is common to the business pursuit exclusions in homeowner's policies, like TIG's. *See Couch, supra*, § 128:25, at 36. The cases construing such an exception cannot be easily formulated into one rule.[14] However, several cases have construed the phrase "activities which are usual to non-business pursuits."

### A.

In *American Family Mut. Ins. Co. v. Moore*, 912 S.W.2d 531 (Mo.App.1995), the court denied coverage claimed under the exception to the business pursuits exclusion. Marsha Moore provided child care services in her home for Renee Davis. *Id.* at 532. Renee was bitten by the Moore family dog,

owned by Marsha's son, Robert. There was testimony that the dog had "vicious propensities." *Id.* at 535. Renee and her parents sued Marsha, her husband Larry, and Robert. *Id.* at 532. The Moore's homeowner's insurance carrier, American Family Mutual, Insurance Company (American Mutual) brought a declaratory action seeking to establish that the business pursuits exclusion was applicable, barring coverage. *Id.* The American Mutual policy contained the same business pursuits exclusion and "non-business pursuits" exception language found in the TIG policy. On appeal, the Davises argued that the exclusion did not apply to Larry and Robert because they "were not engaged in a business pursuit [at the time of the occurrence, and] they [fell] within the exception" for "activities which are usual to non-business pursuits." *Id.* at 535.

The Missouri Court of Appeals held that babysitting was a "business pursuit" under the policy. *Id.* at 533. The relevant activity for construing the exception was the keeping of a "dog with vicious propensities" in an area used for child care purposes. *Id.* at 535–36. In analyzing the exclusion and its exception, the court said, "[N]ot every activity which is a non-business pursuit requires coverage. *To be an exception to the exclusionary clause, the activity must be one that is usually incident to non-business pursuits.*" *Id.* at 535 (emphasis added). The court held that while keeping a dog may be "an activity usually incident to non-business pursuits," this "dog was kept in the home while child[ ]care services were being performed[,]" thus, the keeping of this particular dog in the "babysitting environment and in

---

**14.** *Couch* summarizes the various views of courts as follows:

Several courts have found that the presence of a "non-business pursuits" exception to a "business pursuits" exclusion creates an ambiguity [and] resolved [the ambiguity] in favor of coverage.

While not finding ambiguity, several other courts have interpreted the exception narrowly in order to avoid conflicts between the two provisions. For example, several courts have taken the view that "non-business pursuits" refers to activities that are not associated with the insured's business activity.

Other courts have taken a broader view of the exception, reasoning that the language

clearly recognizes that coverage will be extended to some liabilities which have arisen in the course of the insured's business and are causally connected thereto. Also applying a broad interpretation, some courts have held that "non-business pursuits" refers to activities not solely referable to the conduct of the insured's business. Courts in one jurisdiction have gone so far as to hold that the "non-business" exception effectively limits the "business pursuits" exclusion to activities reasonably necessary to carry on the insured's business....

*Couch, supra*, § 128:25, at 36–38 (footnotes omitted).

close proximity to small children, who were on the premises pursuant to a business pursuit" was not an activity within the non-business pursuit exception. *Id.* at 535–36.

In *Badger Mut. Ins. Co. v. Ostry,* 264 Ill.App.3d 303, 201 Ill.Dec. 524, 636 N.E.2d 956 (1994), Ostry sustained injuries while a passenger in a boat driven by the insured, Kraemer. *Id.,* 201 Ill.Dec. at 525, 636 N.E.2d at 957. At the time of the accident, Kraemer was delivering a boat on behalf of Grand Sport to Ostry. *Id.,* 201 Ill.Dec. at 525–26, 636 N.E.2d at 957–58. Kraemer was a mechanic at Grand Sport and was not employed to deliver boats, but he had done so in the past. Grand Sport did not pay him directly for boat deliveries; instead, Kraemer was compensated by the boat owner upon delivery. *Id.* The trial court found that Kraemer's homeowner's insurance carrier, Badger Mutual Insurance Company (Badger Mutual), did not have a duty to defend because Kraemer's activity fell within the business pursuits exclusion of the policy. *Id.,* 201 Ill.Dec. at 527, 636 N.E.2d at 959. The relevant policy language excluded coverage for bodily injury "arising out of business pursuits of an insured," but excepted "activities which are usual to non-business pursuits" of an insured. *Id.*

On appeal, Ostry contended that the exception to the exclusion applied, because Kraemer's activity of driving the boat amounted to a recreational activity. *Id.,* 201 Ill.Dec. at 528, 636 N.E.2d at 960. The court disagreed. *Id.* The court further noted that *"while driving a boat may be a casual pastime for the general populace, in this instance, it was Kraemer's business to deliver boats and Ostry was injured while Kraemer was carrying out the very act of delivery for which he was hired." Id.* (emphasis added).

The Vermont Supreme Court appeared to take a broader view of the exception in holding that the exception did apply. In *Vermont Mut. Ins. Co. v. Gambell,* 166 Vt. 595, 689 A.2d 453 (1997), the insured, Gambell, operated a pet-sitting business out of her home. Sleeman brought her dog to Gambell to be boarded. *Id.* In her complaint, Sleeman alleged that as she walked up an icy driveway toward Gambell's house, three dogs jumped on Sleeman, knocking her to the ground. *Id.,* 689 A.2d at 453–54.

In the subsequent lawsuit, Gambell sought a defense from Vermont Mutual Insurance Company (Vermont Mutual) under her homeowner's policy. *Id.,* 689 A.2d at 454. The policy excluded coverage for personal liability "arising out of business pursuits of an insured," but contained an exception for "activities which are usual to non-business pursuits." *Id.* The trial court held that the pertinent activity for purposes of analyzing the exclusion and its exception was Sleeman's walking up the driveway, not Gambell's actions or omissions. *Id.* Under that analysis, the trial court held that Vermont Mutual was obligated to defend Gambell. *Id.*

On appeal, the Vermont Supreme Court held that the exception to the exclusion referred to the activities of the insured and not the claimant. *Id.* The court went on to hold that Gambell's "failure to maintain the driveway in a safe condition and the failure to prevent dogs from roaming the premises" caused Sleeman's injuries. *Id.* Under a broad reading of the exception [citing *Sipple* ], the court explained that these "omissions can hardly be said to contribute to or further the interest of the insured's business. While the omissions are connected in a causal manner with [Gambell's] kennel operation, they are not directly related to that business." *Id.* The court's holding, however, may be explained by its footnoted observation that there was no evidence the three dogs were connected with Gambell's business. *Id.*

### B.

Appellants cite to *Milwaukee Mut. Ins. Co. v. City of Minneapolis,* 307 Minn. 301, 239 N.W.2d 472 (1976), a case where the exception applied to "activities ... which are *ordinarily incident to non-business pursuits[.]* " *Id.,* 239 N.W.2d at 473 (emphasis added). In that case, police officer Nyenhuis arrived at work early one day and, during a conversation with a fellow police officer concerning the operation of his gun, discharged his gun and injured the other officer. *Id.,* 239 N.W.2d at 474. At the time of the incident, Nyenhuis had a homeowner's insurance poli-

cy which excluded coverage for "bodily injury or property damage arising out of business pursuits of any [i]nsured," subject to the exception quoted above. *Id.*, 239 N.W.2d at 473.

Nyenhuis' homeowner's insurance carrier, Milwaukee Mutual Insurance Company (Mutual Insurance) sought a declaration that it had no duty to defend Nyenhuis. *Id.* The lower court found that the "accident arose out of the business pursuits of Nyenhuis, [but] the activities giving rise to the injury were ordinarily incident to nonbusiness pursuits and not excluded by the insurance policy." *Id.* 239 N.W.2d at 475.

On appeal, the Minnesota Supreme Court held that the lower court's findings were not clearly erroneous. *Id.* Noting that "an insurer who denies coverage on the basis of a policy exclusion bears the burden of proof[,]" the court held that Mutual Insurance failed to satisfy its burden of proof. *Id.* The court quoted the lower court's reasoning with approval:

> [H]unting, weapon collecting and target shooting are but examples of non-business pursuits to which activities such as pistol handling and trigger spring checking [the activities giving rise to ... injury] are ordinarily incident.

*Id.*

We do not find this reasoning persuasive. Nyenhuis was "technically on duty 24 hours per day[,]" and, as a police officer, he was required to carry a gun with him while on duty. *Id.*, 239 N.W.2d at 474. At the time of the incident Nyenhuis was at work. In addition, he was discussing and illustrating the use of a gun used in his employment, with a fellow officer. As the lower court held, Nyenhuis was clearly engaged in his business pursuits. To hold that a police officer's demonstration to a fellow officer of how to handle a particular gun at their workplace is "ordinarily incident to a non-business pursuit" would appear inconsistent with the factual setting in which the injury took place and the plain language of the exclusion and its exception. Other cases have construed the same exception language more narrowly.

For example, TIG cites to *State Farm Fire & Cas. v. Hiermer*, 720 F.Supp. 1310 (S.D.Ohio 1988), *aff'd*, 884 F.2d 580 (6th Cir. 1989). In that case, the homeowner's policy excluded bodily injury "arising out of business pursuits of an insured" and contained an exception for "activities which are ordinarily incident to non-business pursuits[.]" *Id.* at 1315. In the underlying complaint, Penn, the injured party, alleged that Hiermer, the insured, intentionally discriminated and retaliated against Penn. *Id.* at 1313. Apparently, Hiermer requested that State Farm Fire & Casualty Company (State Farm), his homeowners insurance carrier, defend him in the lawsuit by Penn.

In an attempt to avoid the business pursuits exclusion and compel State Farm to defend the action, Penn asserted that a particular occurrence of discrimination was not a part of the insured's business pursuits and thus fell within the non-business pursuits exception. *Id.* at 1315. In response, the court found no duty to defend and noted that the individual acts of the insured must be "viewed in the context of the underlying facts, [and the particular incident] was only one incident in a whole course of conduct which was part of the business relationship between [the insured and the injured party]." *Id.* at 1315–16. The court held that racial discrimination, emotional distress, and slander allegations in the complaint left "no doubt that all the actions complained of [by the employee] occurred in the course" of the insured's employment as a supervisor and that the claims against the insured arose "directly out of [the insured's] occupation." *Id.* at 1318.

In *Greenman*, previously discussed, the Michigan Court of Appeals rejected the argument that the alleged sexual harassment and discrimination fell into the non-business pursuits exception to the business pursuits exclusion. Citing *Frankenmuth*, the *Greenman* court held that "[t]he complained[-]of acts themselves need not be performed for profit; *the acts need only be performed during the business pursuit of the insured.*" *Greenman*, 433 N.W.2d at 349 (emphasis added).

In *Thoele,* the homeowner's policy contained an exclusion for bodily injury "arising out of business pursuits of any insured" and an exception for activity "ordinarily incident to a non-business pursuit." 39 F.3d at 726. Sharon Thoele (Sharon) was performing babysitting services for Angela Kanak (Angela) when Angela suddenly began choking and gasping. *Id.* at 725. Sharon's husband, Calvin, attempted mouth-to-mouth resuscitation and heart massage. *Id.* Angela survived, but was left with permanent injuries. *Id.* Angela's parents sued the Thoeles. *Id.* Calvin requested that the Thoeles' homeowner's policy insurer, Aetna Casualty & Surety Company (Aetna), defend him in the lawsuit. *Id.* The federal district court decided that the business pursuits exclusion precluded coverage. *Id.*

On appeal, both parties agreed that Sharon's babysitting constituted a "business pursuit" within the terms of the policy. *Id.* at 727. Calvin, however, argued that his attempt to aid Angela was an activity "ordinarily incident to a non-business pursuit," requiring Aetna to defend him. *Id.* at 728. The court of appeals disagreed, holding that the Aetna homeowner's policy excluded coverage for Angela's injuries. *Id.* at 730. Applying Illinois law, the court concluded that

> if the injury was caused by an act that would not have occurred but for the business pursuits of the insured, that act is beyond the scope of the policy. If, however, the injurious act would have occurred regardless of the insured's business pursuit, the exception applies and coverage is provided, even though the act may have had a casual relationship to the business pursuit.

*Id.* at 728 (emphasis added) (citations omitted).

## IX.

We recognize that not all factors from the cases we have reviewed must be present to determine whether the exception applies or not. As in the construction of the business pursuit exclusion, whether the exception for activity usual to non-business pursuits applies must be decided on a case-by-case basis. However, applying the factors we discern in the foregoing cases, we are persuaded that Sagawa's conduct did not come within the exception for activities usual to non-business pursuits.

Appellants' claims against Sagawa were based on his position as a housing inspector with HHA. According to the complaint, Sagawa repeatedly gained access to their homes under the guise of conducting HHA home inspections. *See Frankenmuth,* 354 N.W.2d at 305-06. Appellants specifically assert that Sagawa was "an agen[t] of HHA." In addition, all of the Appellants were HHA tenants at the time of the alleged conduct, and the alleged conduct occurred "during [Sagawa's] housing inspections." Appellants also claimed that his actions represent "an abuse of his office."

Clearly, Appellants' claims cannot be separated from Sagawa's position with HHA. The alleged conduct originated in Sagawa's performance of his HHA duties. *See Hiermer,* 720 F.Supp. at 1314; *see also Thoele,* 39 F.3d at 728. Sagawa's inspection visits were not "usually incident to *non-business* pursuits." *Moore,* 912 S.W.2d at 535 (emphasis added). Indeed, the alleged conduct occurred during inspections "for which [Sagawa] was hired." *Ostry,* 201 Ill.Dec. 524, 636 N.E.2d at 959.

The actual acts complained of need not be performed for profit if the acts were performed during the insured's business pursuits. *Greenman,* 433 N.W.2d at 346. It cannot be said that "the injurious act[s] would have occurred regardless of the insured's business pursuit" since the acts took place in the discharge of Sagawa's duties. *Thoele,* 39 F.3d at 728. According to the complaint, Sagawa was performing his duties at the time of the alleged occurrences, and the alleged conduct arose from his employment. *See Hiermer,* 720 F.Supp. at 1315-16; *Ostry,* 201 Ill.Dec. 524, 636 N.E.2d at 960. All of the claims against Sagawa also arose from the fact of his employment with HHA. *Frankenmuth,* 354 N.W.2d at 308.

## X.

Finally, in construing the terms of insurance contracts, we honor the objectively reasonable expectations of policyholders and intended beneficiaries. *Hawaiian Ins. & Guar. Co. v. Brooks,* 67 Haw. 285,

290–91, 686 P.2d 23, 27 (1984). In view of Appellants' allegations, we find it unreasonable for Sagawa or Appellants to believe TIG would defend or indemnify him from liability for the alleged injuries. *Id.* The alleged conduct plainly "occurred in the course" of Sagawa's employment and "directly out of [his] occupation" and thus implicated the business pursuits exclusion. *Hiermer*, 720 F.Supp. at 1318; *see also Couch, supra,* § 128:16, at 23–24.

## XI.

Accordingly, we affirm the December 4, 1997 final judgment against Appellants and Sagawa and in favor of TIG, and the March 18, 1997 order granting TIG's motion for partial summary judgment against Sagawa, but for reasons different from those adopted by the second motions court.