Leo L. MARTINELLI, Plaintiff-Respondent,

v.

SECURITY INSURANCE COMPANY OF
NEW HAVEN, Defendant-Appellant.

No. 34500.

Missouri Court of Appeals,
St. Louis District, Division 2.

Nov. 21, 1972.

Motion for Rehearing or to Transfer
Denied Jan. 12, 1973.

Application to Transfer Denied
March 12, 1973.

Padberg, Raack, McSweeney & Slater, St. Louis, for defendant-appellant.

Gray, Friedman & Ritter, Charles E. Gray, St. Louis, for plaintiff-respondent.

SIMEONE, Judge.

This is an appeal from a judgment of the Circuit Court of the City of St. Louis in favor of the plaintiff-respondent, Leo L. Martinelli, against the defendant-appellant, Security Insurance Company of New Haven (hereinafter Security) in the amount of $6,500 plus interest and costs. Security defends on the ground that the homeowner's policy issued by Security does not cover the loss sustained.

The appeal involves two deceptively simple issues: (1) is the act of walking by an insured an activity which is ordinarily incident to a non-business pursuit so that a homeowner's policy provides coverage to the insured while he is at his place of employment and allegedly injures a fellow employee; and (2) is the insurance company estopped from denying coverage in an action brought by the injured person when the attorney for the insurer makes statements in the defense of an action brought against the insured which indicate that there is coverage under the policy. For a resolution of these issues we turn to the facts.

Plaintiff-respondent, Martinelli, and Gilbert J. Engel, Jr., were fellow employees at the Progressive Pattern Company located in the City of St. Louis. The depositions of Martinelli and Engel which show the nature of the incident were introduced in the non-jury trial. The incident giving rise to all this litigation occurred on October 18, 1966, in the factory area of the company. There is a general middle aisleway running from the front to the rear, dividing two sides of the factory. The aisle is roughly eight to ten feet wide. Mr. Martinelli was pushing a "large wooden core box" weighing approximately 200 pounds onto a forklift truck which was elevated about three feet. He was in an out-

stretched position ". . . leaning forward at an angle with both hands resting against the side of the box and my shoulder touching the box, pushing . . ." His right leg was outstretched to brace himself. At this time Mr. Engel, while walking in the aisle, came into contact with Martinelli, and as a result of the contact Martinelli suffered a fractured right leg. Mr. Engel was going from his machine to a storage rack to pick up a pair of "parallels" for the job he was working on. Martinelli had been in the act of pushing for some three to four minutes at the time of the injury.

Thereafter suit was filed by Martinelli against Engel for the injuries sustained. The original petition alleged a wilfull and wanton act, but later was amended alleging that the injury was due to Engel's negligence. When the petition was amended to add the count of negligence, Security entered its appearance through its attorney. On March 11, 1969, after the filing of the suit, Security informed Mr. Engel by letter that they would proceed with the defense of the suit, but that ". . . we are reserving our rights to assert at a later date any policy defenses that may be available to us in connection with this matter . . ." This letter was written after Security had been informed by Engel's personal attorney that the amended petition had been filed. The cause of Martinelli against Engel was ultimately submitted to the jury on the negligence count and resulted in a verdict and judgment for Martinelli for $6,500 on January 6, 1970. That judgment has not been satisfied.

At the time of the injury to Martinelli, there was in force a homeowner's insurance policy issued by Security to Gilbert J. Engel, Jr. and Virginia L. Engel providing $25,000 coverage. The policy provided that the insurer would ". . . pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleg-

ing such bodily injury . . ." A special exclusion of the policy, and the one involved in this litigation, provided that:

"Section II of this Policy Does not Apply:

(a)(1) to any business pursuits of an Insured, except under Coverages E and F, activities therein which are ordinarily incident to non-business pursuits, . . ."

The judgment against Engel being unpaid, Martinelli filed his petition against Security on August 5, 1970, alleging that "Under the aforesaid policy of insurance defendant is liable for the payment of said judgment but has refused and continues to refuse [to pay] said judgment." Martinelli prayed judgment against Security in the amount of $6,500 plus interest and costs.

On November 4, 1971, the court below entered judgment in favor of the plaintiff, Martinelli, in the amount of $6,500 plus interest and costs, finding that ". . . the exclusionary clause contained in the defendant's policy to be certainly ambiguous or equivocal and therefore finds said clause of said policy must be strictly construed against defendant as to create coverage. The mere bumping into plaintiff by the defendant's insured is an excludable activity. The defendant in one case took the position the policy created coverage and is now estopped from taking a different position."

The trial court therefore resolved that: (1) the exclusionary clause was ambiguous; (2) the "walking" into Martinelli was an act ordinarily incident to a non-business pursuit, and hence an exception to the exclusionary clause; and (3) that the insurance company was estopped from denying coverage because in the Martinelli v. Engel trial it took the position that there was coverage under the policy.

The appellant, insurance company, urges that the exclusionary clause is not ambiguous and urges the incident giving rise to the judgment against the insured, Engel, is

within the exclusionary clause of the policy. Security further contends that it is not estopped from denying coverage since it proceeded to defend under a reservation of rights.

Respondent, on the other hand, contends that the clause is ambiguous, that the "bumping" into Martinelli was an "activity ordinarily incident to a non-business pursuit" and that with complete knowledge of the facts, Security defended the Engel suit and admitted that the policy afforded coverage; hence, Security is now estopped from denying coverage in this cause of Martinelli v. Security.

■ The general principles relative to the construction of insurance policies are well-known and clear. The rules have been variously stated, but " ' . . . Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, insofar as open to different constructions, that most favorable to the insured must be adopted . . .' " Dieckman v. Moran, Mo., 414 S.W.2d 320 [1–3]. The rule " ' . . . does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity when none exists.' " Dieckman, *supra*. See Morris v. Western Cas. & Sur. Co., Mo.App., 421 S.W.2d 19 [6–9]; Jordan v. United Equitable Life Insurance Company, Mo.App., 486 S.W.2d 664, 1972. Exclusionary clauses are to be construed against the insurer if they are of uncertain import. Aetna Cas. & Sur. Co. v. Haas, Mo., 422 S.W.2d 316 [4–7].

■ The same exclusionary clause involved in this case was the subject of litigation in *Dieckman*. Plaintiffs, the Dieck-

mans, recovered judgment for personal injuries and loss of consortium against Moran for $17,000 when, during the course of employment, Moran activated a power brake on a sheet metal machine causing injuries to Mr. Dieckman. The Dieckmans then brought an equitable garnishment proceeding against Moran and his insurer, Hartford Fire Insurance Company. The determinative question was whether the incident was excluded from coverage under Moran's homeowner's policy as a "business pursuit." The court held that the policy provision here under scrutiny[1] is " . . . not ambiguous, as plaintiffs claim. True, it is poorly worded. The intent, however, is clear: business pursuits of the insured are excluded, except activities therein which are ordinarily incident to non-business pursuits . . ." Dieckman, *supra*, 414 S.W.2d at 321–322. We are constrained, therefore, to hold that the exclusionary clause is not ambiguous and rule this contention against respondent, Martinelli.[2]

But *Dieckman* does not rule this case. It was not contended there that Moran (the insured) was not engaged in a business pursuit at the time of the injury, or that he was engaged in an activity " . . . ordinarily incident to a non-business pursuit under the exceptions to the excluded coverage." Dieckman, *supra*, 414 S.W.2d at 322. So it must be determined whether walking or bumping into a fellow employee on business premises and during business hours is an activity which is ordinarily incident to a non-business pursuit.

■ The mere fact that the insured, Engel, was at his place of employment does not make the exclusionary clause applica-

---

1. The policy provided that "Section II of this Policy Does Not Apply: (a)(1) to any business pursuits of an Insured, other than under coverages E and F, activities therein which are ordinarily incident to non-business pursuits, . . . " Dieckman, *supra*, at 321.

2. There is a split of authority on whether such a clause is ambiguous. See Gulf Insurance Co. v. Tilley, D.C.N.D.Ind., 280 F.Supp. 60, affd., 7 Cir., 393 F.2d 119; State Farm Fire & Cas. Co. v. National Union F. Ins. Co., 87 Ill.App.2d 15, 230 N.E.2d 513; McDougall v. Hartford Fire Insurance Co., 94 Idaho 220, 485 P.2d 962.

ble. For the exception in the exclusionary clause affords coverage for activities which are ordinarily incident to non-business pursuits. ". . . [C]overage will be extended to liability which arises, even though connected in some causal manner with the insured's 'business pursuits,' out of an act or omission that is ordinarily not associated with or related to the insured's business pursuits." Gulf Insurance Co. v. Tilley, D.C.N.D.Ind., 280 F.Supp. 60, 64. Courts in other jurisdictions have also had difficulty in resolving the application of this exception found in the exclusionary clause.[3]

Respondent relies on Gulf Insurance Co. v. Tilley, *supra*. In that case the insurance company sought a declaratory judgment to determine its liability under a similar exclusionary clause in a policy insuring the Tilleys. Mrs. Tilley "baby-sat" for an infant daughter of Patricia Smith Wood while Mrs. Wood was at work. Mrs. Tilley also had children. She prepared breakfast and plugged a percolator into a wall outlet. Apparently the Smith child "grabbed hold" of the cord and the hot contents spilled and injured her. The court held that there was coverage and the activity was incident to a non-business pursuit. ". . . [A]s a general proposition, there will be no liability coverage with respect to an insured's 'business pursuits,' but that, as an exception to this broad rule, coverage will be extended to liability which arises . . . out

of an act or omission that is ordinarily not associated with or related to the insured's business pursuits." Tilley, *supra*, 280 F. Supp. at 64. The policy is to be read to extend coverage to ". . . certain acts or omissions which are not, by their very nature, tainted by being associated with an insured's business pursuits, but which, nevertheless, with respect to the insured's potential liability arising therefrom, may have been causally related to such business pursuits." Tilley, *supra*, at 64–65. Preparation of hot coffee is an activity which is not ordinarily associated with a baby-sitter's function.

A similar baby-sitter case arose in California, Crane v. State Farm Fire & Casualty Co., 14 Cal.App.3d 727, 92 Cal.Rptr. 621. A policy was issued containing a similar exclusionary clause. Plaintiff's daughter was injured while at the home of the insured. Although the exact cause of the injury was not shown, the Court of Appeals held that claim was excluded from coverage under the policy. In the course of the opinion the court stated: ". . . [I]t is held that the phrase 'activities therein which are ordinarily incident' relates to something which is primary, i. e., the previously excluded business pursuit." Crane, *supra*, at 624. The *Crane* case was later reversed by the Supreme Court of California, en banc, on the ground that the injury occurred while the insured was caring for her own children and was engaged

3. In Pitre v. Pennsylvania Millers Mutual Insurance Co., La.App., 236 So.2d 920, Alphonse Pitre was injured when his co-employee in a cotton products company started an "augur." The Louisiana court held that the employees were engaged in their employer's business at the time of the accident, and the act of pushing the button to start the augur was in furtherance of his business pursuits and was not an act ordinarily incident to a non-business pursuit. In Michigan Mutual Liability Co. v. Ferguson, 15 Mich.App. 298, 166 N.W.2d 525, the insured, while at his place of business shoveling snow, flung it from his hands hitting a high tension wire, shorting it and damaging an adjacent building and parked autos. The court

held that this was not a business pursuit and suggested that it was an activity incident to a non-business pursuit. See also McDougall v. Hartford Fire Insurance Co., 94 Idaho 220, 485 P.2d 962 (coverage); State Farm Fire & Cas. Co. v. National Union F. Ins. Co., 87 Ill.App.2d 15, 230 N.E.2d 513 (coverage—an employee engaged in "horseplay"—hitting a steel door with a mallet which bounced back injuring plaintiff); Morrill v. Gallagher, 370 Mich. 578, 122 N.W.2d 687 (throwing a fire-cracker). For a thorough collection of cases see Crane v. State Farm Fire & Casualty Co., 14 Cal.App.3d 727, 92 Cal.Rptr. 621, reversed, Crane v. State Farm Fire & Casualty Co., 5 Cal. 3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129.

in the ". . . nonbusiness regimen of maintaining a household and supervising her own children." Crane v. State Farm Fire & Casualty Co., 5 Cal.3d 112, 95 Cal.Rptr. 513, 515, 485 P.2d 1129, 1131.

From these and other cases it can be concluded that such an insurance policy covers an activity, although it occurs while the insured is engaged in a business pursuit, if the activity is ordinarily incident to a non-business pursuit. But not every activity which is a non-business pursuit requires coverage. The activity, to be an exception to the exclusionary clause, must be one which is not associated with or related in any way to the insured's business pursuits. State Farm Fire & Cas. Co. v. National Union F. Ins. Co., 87 Ill.App.2d 15, 230 N.E.2d 513; Morrill v. Gallagher, 370 Mich. 578, 122 N.W.2d 687. The activity of "walking" or "bumping" may or may not be an activity incident to a non-business pursuit. In this case, however, it is clear that the activity of Engel in attempting to "pick up a pair of parallels" for use in his work for his employer cannot be said to be an activity which is ordinarily incident to a non-business pursuit. This act of "walking" or "bumping" or coming into contact with Martinelli not only took place on the employer's premises, but, as in Pitre, *supra*, was in ". . . furtherance of his business pursuits and [was] not an ordinary incident to non-business pursuits." Pitre, *supra*, 236 So.2d at 921.

We therefore hold that under the circumstances of this case the policy did not afford coverage and the act of "walking" or "bumping" was excluded from coverage.

Security contends that it is not estopped in this action to deny coverage because of "trial tactics" in the Martinelli v. Engel suit. The respondent, Martinelli, contends that Security is estopped because during that trial the attorney for Security admitted that the policy afforded coverage, and therefore by its previous conduct, Security is now estopped from denying coverage.

During the course of the Engel trial the following occurred:

"[On Voir Dire:] MR. McSWEENEY [Attorney for Security]: * * * There was an inquiry about the Security Insurance Group, by Mr. Gray; now, with that you should have an idea —I mean with that inquiry about Security Insurance Group, that there is an insurance policy in this case. Now, is there anybody on this panel who feels that because that is so you will automatically bring in a verdict for the plaintiff, because there is an insurance company that is going to pay for any verdict, if it is brought in under certain instructions?

(No response)

MR. McSWEENEY: Hearing no response, I assume you won't. . . .

Is there any one who feels that way in this case, that a verdict will in fact be against the insurance company, so that you will bring in a verdict for the plaintiff?

(No response)

MR. McSWEENEY: Hearing no response, I assume you won't.

[On Opening Statement:] MR. McSWEENEY: * * * I anticipate the evidence will show further that it was only after the discovery of the fact that Mr. Engel had a home owner's insurance policy—which might be available to satisfy any kind of recovery against Mr. Engel, because of negligible carelessness, as opposed to an intentional act,—that the pleadings in this case were amended, etc. * * *

[On Closing Argument:] MR. McSWEENEY: I will state quite frankly, as I did in the beginning of the case, that I represent an insurance company basically, but what is involved here? I think the main thing involves the question of negligence. Mr. Dobberstein is here representing Mr. Engel individually under Count I, which has been dismissed.

If just because there is insurance, everything else as to whether he is really entitled to a reward at your hunds [sic], goes out the window, then we might as well shut down the courtrooms, and not have jurors hear the cases, and we won't need them to decide that justice is to be determined in these cases. All that would be necessary would be for people to come in and file their claim and that would be the end of it . . .

MR. McSWEENEY: * · * * Now, if willfull assault isn't intentional, I don't know what is. Now, later on we find from Mr. Martinelli's testimony that he knows there is an insurance policy—that Mr. Engel has an insurance policy, and then his petition is amended to allege a negligent injury. He did not know that at the time his case was first filed . .

MR. McSWEENEY: * * * In all honesty, I am here representing an insurance company which I told you about at the beginning, and as Mr. Martinelli told you from the stand he knows he can only have a verdict that is based on a negligent act . . ."

Based on these statements, even though there was a reservation of rights, the respondent contends that Security ". . . is now estopped to assert that the policy is not effective. Its conduct in admitting insurance in the first trial would be considered prejudicial to its insured, Mr. Engel . . . The rights of Mr. Martinelli are no less than Mr. Engel's rights." The appellant counters by saying that once the insurance question was asked, it was permissible to admit the existence of the policy ". . . so as to thereafter tactically be able to cross-examine Plaintiff, Martinelli, with regard to his version of the incident, and whether the inconsistency of his position had anything to do with his hope of collecting under the policy."

 An insurance company may, of course, in certain instances, be estopped. The rule generally is stated to be that

when a liability insurer conducts a defense of an action brought against the insured with knowledge of the facts and without giving notice of a reservation of rights, the insurer is thereafter precluded from setting up a defense of non-coverage. Missouri Managerial Corp. v. Pasqualino, Mo.App., 323 S.W.2d 244 [4–6]; Hankins v. State Farm Mut. Auto. Ins. Co., Mo. App., 379 S.W.2d 829; Royle Min. Co. v. Fidelity & Cas. Co. of New York, 161 Mo. App. 185, 142 S.W. 438 [2]; Annot., 38 A.L.R.2d 1148; 16A Appleman, Insurance Law and Practice, ch. 317, § 9088; 18 Couch, Insurance 2d, §§ 71:13–71:20. "For waiver or estoppel to arise it seems to be essential, and rightly so, for the insurer to have knowledge of the facts upon which it could base forfeiture or deny coverage, but notwithstanding such knowledge fail to deny coverage, fail to assert forfeiture, and to go ahead and investigate and defend the claim without first taking a nonwaiver agreement.". Pasqualino, *supra*, 323 S.W.2d at 250.

 The elements of estoppel have often been stated. While it is often loosely used, there are certain well-defined elements. Among the essential elements of estoppel is that the party asserting it must, in some manner, suffer a legal detriment, change his position for the worse and be prejudiced. Hanna v. Nowell, Mo.App., 330 S.W.2d 595 [9]; Mo.Digest Estoppel; Schmidt v. National Auto. & Cas. Ins. Co., 8th Cir., 207 F.2d 301, 38 A.L.R. 2d 1142, 1157–1160. See also Taylor v. Farmers Bank of Chariton County, Mo. App., 135 S.W.2d 1108. Another essential element is that there must be a showing of reliance—that the injured party relied on the conduct of the insurer or was misled by it to his prejudice. Western Casualty & Surety Co. v. Beverforden, 8th Cir., 93 F.2d 166; Commerce Trust Co. v. Weed, Mo., 318 S.W.2d 289.

 Under Missouri law, a third party who has been injured has the right to bring an action against the insurer after

recovering a judgment against the insured. § 379.200, RSMo. The right of a third party who has been injured is dependent upon the right of the insured. It has been held, and respondent relies on the principle, that the judgment creditor of the insured stands in the shoes of the insured and his rights are no greater and no less than the insured's would have been in an action by the insured if the insured had paid the judgment. Respondent relies on Meyers v. Smith, Mo., 375 S.W.2d 9, for the proposition that the rights of Mr. Martinelli are no less than Mr. Engel's rights. The court stated in *Meyers* that ". . . in an action by the injured party against the insurer, after a judgment has been obtained by the injured party against the insured, the injured party stands in the shoes of the insured and his rights are no greater and no less than the insured's would have been in an action between the insured and the insurer, . . ." Meyers, *supra*, at 15. This language, however, was used in the context that the insurer can take advantage of any defense that the insured may have against the third party, and was not a situation where the third party sought to apply the doctrine of estoppel against the insurer.

■ Here, although the insurer had knowledge of the facts at the time it defended the Engel suit, it did so under a notice of reservation of rights. Hankins, *supra*. Furthermore, it is difficult to comprehend how and in what respects the plaintiff, Martinelli, can satisfy the principles of estoppel. It is difficult to see how Martinelli was in any way prejudiced by the conduct of the insurer in defending the Engel suit. Even if it be presumed that Engel, the insured, was prejudiced, there is nothing to indicate that the plaintiff, Martinelli, was in any manner prejudiced or suffered any detriment or relied on the conduct of the insurer. To hold that there was estoppel under these circumstances would distort the well-established principles of estoppel.

■ There is another reason why we believe this point must be ruled against respondent. The general principle has long been recognized that "'As a general rule, the doctrines of waiver or estoppel can have a field of operation only when the subject matter is within the terms of the contract, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Accordingly, it has been held by the weight of authority that . . . estoppel cannot create a contract of insurance or so apply as to bring within the coverage of the policy property, or a loss or risk, which by the terms of the policy is expressly excepted or otherwise excluded . . .'" Weber v. Union Life Ins. Co., Mo.App., 394 S.W.2d 565 [3, 4]; Graham v. Gardner, Mo.App., 233 S.W.2d 797 [10]. The principles of estoppel cannot be used to protect the insured against certain risks which are expressly excluded. Graham v. Gardner, *supra*; cases collected in 1 A.L.R.3d 1139, 1147–1148. Since we have held that the particular activity is within the exclusionary clause, Security cannot be estopped in view of the facts presented here.

Therefore, in view of the conclusions reached that the exclusionary clause is not ambiguous, that the particular activity of the insured, Engel, is not within the exception to the exclusionary clauses and that the principles of estoppel are not applicable to these circumstances, the judgment of the trial court is reversed.

SMITH, P. J., and KELLY, J., concur.