STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,

v.

Gordon GENGELBACH, et al., Defendants.

No. 86-6025-CV-SJ-6.

United States District Court
W.D. Missouri,
St. Joseph Division.

Aug. 5, 1987.

R.A. Brown, Brown, Douglas & Brown, St. Joseph, Mo., for State Farm Mut. Auto. Ins. Co.

L.R. Magee, Frank D. Eppright, Hines & Magee, Kansas City, Mo., for Tippits.

Lawrence Fisher, Plattsburg, Mo., for Gengelbachs.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Plaintiff insurer seeks a ruling that it is not obligated under a "personal and farm liability policy" for an injury that occurred as the result of a fall through a hole in the first floor of an unfinished house on a residential lot built by the insured for sale. The policy excludes "any business pursuits of an insured, other than activities therein which are ordinarily incident to non-business pursuits...." P.Exh. 1, Complaint, ¶ 12. Farming operations are defined as non-business pursuits. *Id.*, Complaint, ¶ 11. It is quite clear that the insured Gengelbach family would not have been covered if an accident had occurred during the course of the residential construction or simply because of some defect in construction. The peculiar facts of this case, however, relate to the quoted exclusion to the exclusion rather than the exclusion itself.

■ The testimony is undisputed that the residence was in an unfinished condition for several years and that Gengelbach, who was a farmer as well as a residential developer, used the basement to construct hog houses, which is obviously a farming activity. An open area in the basement ceiling, left unfinished but intended as a fireplace, rendered the basement uncomfortably cold in the winter, despite an electric heater. A farm employee of Gengelbach, or a son assisting in farming operations, in order to make the construction of hog houses more comfortable, covered the hole with a sheet of insulation, a weak, temporary material. The hole was left in that condition, dangerous to anyone on the first floor of the structure who was unaware that the covering was not weight-bearing. An unaccompanied visitor, interested in the residence as a prospective purchaser or simply curious, stepped on the insulation covering the hole and fell to the basement, with allegedly serious injuries to a child she was holding. The question is whether the placement of a substance concealing the hole was an activity "ordinarily incident to nonbusiness pursuits."

Resolution of the question could probably be made simply on the wording of the insurance policy, in light of the uncontested facts. Two cases dealing with the same insurance policy language are illuminating, however. In *Martinelli v. Security Insurance Co. of New Haven*, 490 S.W.2d 427 (Mo.App.1972), the appellate court ruled that a personal liability policy did not cover an employee's conduct when he negligently jostled or bumped another employee while on the job and walking in an aisle from his machine to a storage rack to pick up a pair of "parallels" for use in his work. The Missouri court noted and distinguished an Indiana federal court decision in which a professional babysitter's personal liability policy was held to cover injury to a small child who became entangled in a coffee percolator cord and was burned by hot coffee which the insured had prepared for her personal use and the use of a guest. *Gulf Insurance Co. v. Tilley*, 280 F.Supp. 60 (N.D.Ind.1967), affirmed 393 F.2d 119 (7th Cir.). The injury in *Martinelli* was deemed to be business-related and not within the exclusion for "activities ... ordinarily incident to non-business pursuits." The injury from the coffee-making operation in *Tilley*, while business-related in the sense that the injury would not have occurred in the absence of the professional baby-sitting activities, was deemed to be the result of an activity "ordinarily incident to non-business pursuits."

In the present case the exact cause of injury was more like *Tilley* than *Martinelli*, although the cause was farm-related rather than simply personal. Since farm-related activities are covered, the exception to the business-related exclusion is controlling and there is coverage.

■ While there is an element of dual causality, as in *Tilley*, the relationship to

the Gengelbach residential construction business is somewhat remote, far more remote from that business than the incident described in *Martinelli*. It is true that a phrase in *Martinelli* is somewhat helpful to the insurer, in that Judge Simeone cites Illinois and Michigan cases for the proposition that the non-business activity exclusion is said to refer to activities "not associated with or related in any way to the insured's business pursuits." 490 S.W.2d at 432. This statement was clearly unnecessary to the *Martinelli* decision, and I decline to rule that Missouri law qualifies the policy language and tilts it in favor of the insurer as much as might be supposed from logical extension of the phrase in *Martinelli*. On the contrary, the general rule of construction favors insureds when the language is reasonably susceptible of construction in their favor. The *Martinelli* quote on which plaintiff relies may not be wholly consistent with *Tilley*, but the Missouri court seems to find *Tilley* an acceptable result.[1]

It is true that what happened here may be far from what the insurer contemplated, but having adopted the pertinent language the insurer is bound to comply with its terms. It would have been relatively simple (though perhaps harsh) for the insurer simply to have specified that it would not provide coverage when a claim arises directly or indirectly from an insured's business activities. Instead the insurer chose to create an exception to the business exception which, fairly construed, covers the activities in this case.

The language in question has been criticized with some frequency. *See, e.g., Myrtil v. Hartford Fire Ins. Co.*, 510 F.Supp. 1198, 1202 (E.D.Pa.1981). In *Martinelli* the court noted that the language has created "difficulty" in resolving the "applica-

tion of this exception found in the exclusionary clause." 490 S.W.2d at 431. While concluding that the clause is not intrinsically ambiguous, the court repeated that it was " 'poorly worded.' " 490 S.W.2d at 430. Insurers have not, however, developed less troublesome phrasing.

The trial proof shows causation within the coverage of the "personal and farm liability policy" and judgment will therefore be entered in favor of defendants.[2] SO ORDERED.

---

1. The *Tilley* occurrence could be analyzed as business-related in that the adequacy of the insured's performance of her duty of child care was in question, just as it could conceivably be argued here that leaving the hole in the floor was a contractor's fault, or that neglect to remove the cover was more of a real estate developer's fault than a farmer's fault. Since a major proximate cause of both injuries was within the

exception to the exception, however, coverage exists.

2. If elaboration of the facts is pertinent, the court accepts paragraphs 1–18 of plaintiff's statement of facts in Doc. 38 (plaintiff's memorandum and brief), except for the last sentence in paragraph 13, which fails to refer to the exception to the business-pursuits exception.