**PIPER JAFFRAY COMPANIES INC.,** Piper Jaffray Inc., Piper Capital Management Incorporated and Piper Funds Inc., Plaintiffs,

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,** Pennsylvania, Reliance National Indemnity Company and Executive Specialty Insurance Company, Defendants.

No. Civ. 4–96–1143(MJD/RLE).

United States District Court,
D. Minnesota.

Feb. 26, 1999.

George F. McGunnigle, Robert Paul Thavis, and Steven P. Zabel, Minneapolis, MN, for Piper Jaffray Companies, Inc., Piper Jaffray, Inc., Piper Capital Management Incorporated and Piper Funds, Inc.

Jeff I. Ross, Eugene Sheih, Zelle & Larson, Minneapolis, MN, for National Union Fire Insurance Company of Pittsburgh Pennsylvania.

David W. Evans, Haight, Brown & Bonesteel, L.L.P., San Francisco, CA, Richard Patrick Mahoney, Victor E. Lund, Mahoney, Dougherty and Mahoney, Minneapolis, MN, for Executive Specialty Insurance Company.

Bradley Mitchell Jones, Meagher & Geer, Minneapolis, MN, Wallace A. Christensen, Daniel J. Standish, Eric M. Jaffe,

Ross, Dixon & Bell, Washington, DC, for Reliance Insurance Company.

## MEMORANDUM AND ORDER

DAVIS, District Judge.

### BACKGROUND

Plaintiffs Piper Jaffray Companies Inc. ("PJCI" or "PJC"), Piper Jaffray Inc., Piper Capital Management Incorporated ("PCM") and Piper Funds Inc. ("Piper") purchased Directors and Officers ("D & O") insurance policies from Defendants National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), Reliance National Indemnity Co. ("Reliance"), and Executive Risk Specialty Insurance Company ("ERSIC"). National Union sold two $10 million primary D & O policies to Piper, one in effect from December 1993 to December 1994 and the other from December 1994 to December 1996; Reliance sold a $5 million excess policy to Piper, effective from December 1993 to December 1994; and ERSIC sold Piper a $10 million excess policy, effective from December 1994 to December 1996. Each excess policy "followed form" to the corresponding underlying National Union primary policies.

Between December 1993 and December 1996, Piper and its directors and officers were the defendants in various lawsuits. Piper requested reimbursement from its D & O insurance providers for costs incurred in defending and resolving said lawsuits. All three insurance providers denied coverage and cited three allegedly applicable policy exclusions: (1) the Mutual Fund Exclusion–Endorsement 8; (2) the Professional Services and Investment Services Exclusions–Endorsements 11 and 12; and (3) Exclusion (g) and Endorsement 20. In May 1996, Piper commenced a lawsuit challenging denial of coverage.

In June 1997, this Court denied coverage for certain of Plaintiffs' underlying claims, held that Defendants owe Plaintiffs indemnification for losses suffered in the

*McDaid et al. v. Piper Jaffray Companies, Inc. et al.*, 94–454–RRM (D.Del) class action, and permitted the case to go forward as to coverage for losses incurred in two underlying class action lawsuits—*Gordon v. American Adjustable Rate Term Trust, Inc.1996*, No. 3–94–1377 (D.Minn.) and *Christian Fellowship Foundation Peace United Church v. American Government Income Portfolio, Inc.*, No. C95–987R (W.D.Wash.). *See Piper Jaffray Companies Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 967 F.Supp. 1148 (D.Minn.1997).

This case is presently before the Court on the following motions: (1) Plaintiffs' motion for declaratory judgment in the full amount necessary for indemnification of all losses suffered by Plaintiffs in the *McDaid* class action, without any allocation of loss to the corporate defendant in the action-Piper; (2) Plaintiffs' and Defendants' cross motions for summary judgment as to the applicability of the D & O policies' Professional Services and Investment Services Exclusions—Endorsements 11 and 12—to the underlying *Gordon* and *Christian Fellowship* class actions; (3) Defendants' motion for summary judgment holding that the closed-end funds in question in the *Gordon* and *Christian Fellowship* cases are "mutual funds" for purposes of the D & O policies' Mutual Fund Exclusion–Endorsement 8; (4) motion for summary judgment by Defendants National Union and ERSIC regarding Exclusion (g) and Endorsement 20 of the 1994–1996 National Union D & O Policies and the ERSIC Excess Policy on the grounds that said provisions preclude coverage under those policies for the claims in *Christian Fellowship*.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material

fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219–20 (8th Cir. 1992); *Aucutt v. Six Flags Over Mid-America, Inc.,* 85 F.3d 1311, 1315 (8th Cir.1996). The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party. Fed .R.Civ.P. 56(b); *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. To defeat summary judgment when a properly supported motion for summary judgment is made, however, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

## II. Indemnification for Losses Incurred in McDaid

This Court previously held that Piper is entitled to indemnification by Defendants for losses incurred in the *McDaid* class action. *Piper,* 967 F.Supp. at 1161. Defendants' D & O insurance policies, in accordance with industry practice, reimburse corporations for indemnification of their officers and directors for covered losses but do not provide coverage for independent claims against a corporate entity. *See* 1993–94 National Union Policy at ¶ 9; *Nordstrom, Inc. v. Chubb & Son, Inc.,* 54 F.3d 1424, 1432 (9th Cir.1995) (" '[a] D & O insurer is responsible for only the loss attributable for liability imposed by law upon the named insureds … [and] has no responsibility for liability imposed on the corporation for its wrongful acts.' ") (citing William E. Knepper & Dan A. Bailey, Liability of Corporate Directors and Officers, § 17.06 (4th ed. 1988 & Supp.1992)). Accordingly, "proper allocation .. among the insured and the uninsured claims, persons, or entities is a procedure established by law and is a recognized practice of the insurance industry" to determine the portion of settlement costs covered by a D & O policy. *Nordstrom,* 54 F.3d at 1430 (citing Knepper & Bailey, *supra,* § 17.06 (4th ed. 1988 & Supp.1992)). The issue before this Court is whether Plaintiffs are entitled to 100% reimbursement for costs and losses incurred in the *McDaid* class action or whether allocation is appropriate to determine the portion of damages for which Piper will be compensated.

### A. Allocation of Costs: The Law

■ Courts have adopted two distinct approaches for calculating reimbursement for plaintiffs seeking recovery for settlement and defense costs under D & O liability insurance policies: (1) the "relative exposure rule"—allocating costs according to the relative risk of exposure and proportional fault of the parties involved; and (2) the "larger settlement rule"—allocating costs only to the extent that overall losses incurred are *higher* by virtue of wrongful acts of uninsured parties. *See, e.g., Raychem v. Federal Insurance Company,* 853 F.Supp. 1170, 1180 (N.D.Cal. 1994); *Caterpillar, Inc. v. Great American Insurance Company,* 62 F.3d 955, 961 (7th Cir.1995); *Nordstrom,* 54 F.3d at 1432. Under the larger settlement rule, allocation occurs only if the corporate entity *alone* is liable for a particular claim or if its liability exceeds that of the officers and directors on a claim for which the corporation is *independently* but jointly liable, thereby increasing the settlement costs. *Nordstrom,* 54 F.3d at 1432; *Raychem,* 853 F.Supp. at 1180–82; *Caterpillar,* 62 F.3d at 960; *Harbor Insurance Company v. Continental Bank Corporation,* 922 F.2d 357, 368 (7th Cir.1990); *Safeway Stores, Inc. v. National Union Fire Insurance Company of Pittsburgh, Pa.,* 64 F.3d 1282, 1288–89 (9th Cir.1995). Thus, under the larger settlement rule, allocation is appropriate only if a corporate entity's independent exposure accounts for a portion of the settlement sum, in which case said portion

is excluded from D & O insurance coverage. *Nordstrom,* 54 F.3d at 1430–31.

In *Nodaway Valley Bank v. Continental Casualty Company,* 715 F.Supp. 1458 (W.D.Mo.1989) ("*Nodaway I* "), aff'd *Nodaway Valley Bank v. Continental Casualty Company,* 916 F.2d 1362 (8th Cir.1990) ("*Nodaway II* "), the Eighth Circuit addressed the issue of whether allocation is required to determine D & O insurance coverage for losses incurred in the settlement of claims against an uninsured corporation and its insured officers and directors. The underlying complaint in *Nodaway,* however, differed significantly from that in the *McDaid* case presently at issue. Unlike *McDaid,* the counts enumerated in the underlying complaint in *Nodaway* separated claims against the insured officers and directors and those against the uninsured corporation—one count contained allegations directed solely against the insured officers and directors, while another count contained allegations against "a corporate holding company['s] ... majority shareholders ... for engaging in collective conduct in breach of fiduciary duty." *Nodaway I,* 715 F.Supp. at 1459. In contrast, the *McDaid* complaint alleges that "Defendants are liable, jointly and severally, as direct participants in the wrongs complained of herein," *McDaid* Complaint at ¶ 12, thus alleging "a single cause of action directed against PCJI, the Piper holding company parent, and three of PJCI's highest-ranking officers and directors." Pl. Reply Mem. Supp. Summ. J. at 7.

Due to the above-described construction of the underlying complaint in *Nodaway,* the *Nodaway* court established an allocation analysis applicable to settlements resolving separate claims against an uninsured corporation and its insured officers and directors rather than claims of joint and several liability against officers, directors, and the corporate entity such as those in the *McDaid* complaint: "[a]t its core, this issue [of allocation] concerns the evaluation of the comparative responsibilities of the particular parties and of their exposure to an award of damages in the underlying suit." *Nodaway II,* 916 F.2d at 1365. Addressing the separate allegations asserted against the corporate entity, the *Nodaway* court noted, however, that "merely derivative corporate liability should not cause an apportionment between the primary [insured] wrongdoer and a vicarious [uninsured] wrongdoer, where both are joined in litigation," and in such cases, the insurer is responsible for complete reimbursement. *Nodaway I,* 715 F.Supp. at 1465–66. Thus, in situations of purely derivative corporate liability, *Nodaway* found that allocation is not required. The question of whether allocation is appropriate in cases of joint corporate liability for all asserted claims, however, was not addressed.

Accordingly, other circuits have split in their interpretation of the Eighth Circuit's approach regarding the applicable settlement rule in cases such as the present— some citing *Nodaway* in support of the larger settlement rule and others citing the case as an application of the relative exposure rule. *See Caterpillar,* 62 F.3d at 961, n. 5 (concluding that *Nodaway* is a relative exposure case); *Harbor,* 922 F.2d at 368 (citing *Nodaway* in support of its adoption of the larger settlement rule); *Nordstrom, Inc. v. Chubb & Son, Inc.,* 820 F.Supp. 530, 533 (W.D.Wash.1992), aff'd, 54 F.3d 1424 (9th Cir.1995) (likening *Nodaway* to *Harbor,* which adopted the larger settlement rule); *Raychem,* 853 F.Supp. at 1180 (discussing *Nodaway* in the context of the larger settlement rule); *Ameriwood Industries International Corporation v. American Casualty Company of Reading, Pennsylvania,* 1994 WL 396089 at *6 (W.D.Mich.) (The Harbor/Nodaway approach has been called the "larger settlement rule").

As observed by the Seventh Circuit in *Caterpillar,* the role of the Court is not to set forth "general canons of allocation for every conflict between D & O insureds and uninsureds" but rather to "read a particu-

lar insurance contract and decide what method of allocation, if any, that contract envisions." *Caterpillar,* 62 F.3d at 961 (citing *Nordstrom,* 54 F.3d at 1432). In *Caterpillar,* the governing language of the insurance policy provided coverage " 'for Loss which the Directors or Officers shall be legally obligated to pay' where 'any claim is first made against the Directors or Officers, individually or collectively, for a Wrongful Act.' " *Caterpillar,* 62 F.3d at 962. *Caterpillar* held that the cited language "implies complete indemnity for claims regardless of who else might be at fault for similar actions," thus precluding coverage for independent but joint corporate liability, unless the disposition of the direct liability increased the settlement. *Id.* at 962–64. Accordingly, the court held "that the larger settlement rule better suits the facts." *Id.* at 962–63.

■ The insurance language at issue in the present case provides coverage for "Loss arising from any claim or claims which are first made against the Directors of Officers ... for any alleged Wrongful Act." National Union D & O Insurance and Company Reimbursement Policy at ¶ 1, Coverage B. This Court notes that the relevant insurance policy language in *Caterpillar* was substantially similar to that at issue in the instant case, suggesting that the language of the present National Union D & O policies requires application of the larger settlement rule.

This Court finds further support for adoption of the larger settlement role in the similarity between the language employed by *Nodaway* and that used to elucidate the fundamental tenets of the larger settlement rule in the above-cited cases. *Nodaway I* holds that D & O coverage exists where a "major proximate cause" of an alleged injury is a covered claim—indicative of a policy that joint corporate liability, arising from acts also giving rise to director and officer liability, is covered by a D & O policy. *Nodaway I,* 715 F.Supp. at 1465–66 (citing *State Farm Mut. Auto. Ins. Co. v. Gengelbach,* 664 F.Supp. 1275,

1277 n. 1 (W.D.Mo.1987), *aff'd* 855 F.2d 859 (8th Cir.1988)). Similarly, *Nodaway I* notes that a "[d]efendant would ... not be exposed to responsibility for corporate coverage where an uninsured employee creates corporate liability or even ... where the corporation alone is sued.," *Nodaway I,* 715 F.Supp. at 1466, significantly omitting joint corporate liability, dependent on the wrongdoings of officers and directors, from the list of situations excluded from D & O insurance coverage.

Accordingly, in light of the language employed in the relevant provisions of the National Union D & O policy presently at issue and the above-described findings in the *Nodaway* case, this Court determines that application of the larger settlement rule is appropriate in the present case.

### B. Case–Based Analysis

■ Under the larger settlement rule, the calculation of reimbursement due Piper under its D & O insurance polices requires that this Court determine if a genuine issue of material fact exists as to whether Piper as a corporate entity (1) *alone* is liable for a particular claim or (2) if its liability exceeds that of the officers and directors on a claim for which the corporation is independently but jointly liable. The Eighth Circuit has held that the burden of proof and persuasion to demonstrate that costs and payments are related to exposure of covered officers and directors rather than the corporate entity lies with the insured. *Nodaway I,* 715 F.Supp. at 1467.

■ In determining whether Piper faced such liability, this Court considers only the claims actually settled as defined by the allegations in the complaint. *Nordstrom,* 54 F.3d at 1433 (citing *Caterpillar,* 864 F.Supp. at 854 (citing *Raychem Corp.,* 853 F.Supp. 1170)). In its consideration of the underlying claims, however, this Court will "construe the complaint liberally" and is "not bound by its formal language." *Id.* (citing *Caterpillar,* 864 F.Supp. at 854)

(citation omitted). Thus, although relevant, the language employed by the *McDaid* Complaint alleging that all enumerated defendants—officers and directors and the Piper corporate entity—"are liable, jointly and severally, as direct participants in the wrongs complained of herein" is not dispositive. *McDaid* Complaint at ¶ 12. Thus, in its application of the larger settlement rule to the present case, this Court examines and considers in turn the various theories postulated by Defendants to demonstrate joint but *independent* corporate liability in the present case.

■ Defendants cite the allegations of mismanagement of Piper's mutual funds and the subsequent losses suffered by investors as evidence that actions by Piper as a corporate entity gave rise to independent corporate liability for the *McDaid* plaintiffs' damages. Def. Mem. Opp. Summ. J. at 13–14 (citing *McDaid* Complaint at ¶¶ 32–36, 45, 57–58, 70). This Court notes, however, that *Piper* found that the malfeasance in the *McDaid* case "lies primarily with Piper's alleged misrepresentations to the market not its actual investment activities." *Piper*, 967 F.Supp. at 1161. Thus, it has already be determined that the alleged mismanagement of Piper's funds was not among the claims upon which the *McDaid* settlement was based. Therefore, this Court finds that wrongdoing committed through corporate management of Piper mutual funds provides no basis for independent corporate liability in the present case and therefore, under the larger settlement rule, no basis for allocation.

Defendants also assert that "[t]he *McDaid* complaint directs specific, separate allegations at PJC as an entity irrespective of the alleged acts or omissions of the individual defendants," citing references in the underlying complaint to statements made by Piper as a corporate entity rather than by the individual officers and directors: (1) "corporate documents and statements," *McDaid* Complaint at ¶ 3; (2) Piper's "duty to disseminate truthful and accurate information," *McDaid* Complaint at ¶ 10; (4) "post-class period statements by PJC," *McDaid* Complaint at ¶¶ 59–60; (5) misleading statements attributable to "Piper Jaffray" and the "Company," *McDaid* Complaint at ¶¶ 29, 36, 44, and 48; (6) PCM's failure to disclose information, rendering public statements about PJC's financial situation misleading, *McDaid* Complaint at ¶¶ 45, 67. *See* Def. Mem. Opp. Summ. J. at 14–15. Defendants also note that "[d]iscovery taken in the underlying case focused largely on activities at PCM [involving employees], not on the individual [officer and director] defendants," further supporting Defendants' assertion that Piper faced liability as a corporate entity independent of its officers and directors.[1]

This Court notes, however, that the *McDaid* complaint defines the individual defendant officers and directors of Piper as "controlling persons of Piper Jaffray within the meaning of Section 20 of the Exchange Act." *McDaid* Complaint ¶ 9. The Complaint sets forth that said officers and directors:

[b]y reason of their positions with the Company, they were able to and did, directly or indirectly, in whole or in material part, control the content of various reports and filings with the SEC and public statements issue by or on behalf of Piper Jaffray. They participated in, approved the issuance of and, as set forth below, signed such reports ... By reason of their positions with the Company, they had access to adverse non-public information concerning Piper Jaffray. The individual defendants had access to internal Company documents, re-

1. Defendants assert that: individual defendants were not deposed; interrogatories did not seek information specifically related to the individual defendants' liability; and few document requests related to documents pertaining to the individual defendants. Def. Mem. Opp. Summ. J. at 15–16.

ports and other information ... As a result of the foregoing, the individual defendants were responsible for the truthfulness and accuracy of the Company's public reports described herein.

*Id.*

Section 20 of the Securities Exchange Act provides that:

"[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter ... shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

15 U.S.C. § 78t(a).

To the extent that the officers and directors "directly or indirectly" controlled the content of the reports, filings with the SEC, and misleading public statements allegedly issued by uninsured Piper employees, the officers and directors are precluded from invoking the "good faith" defense, as they "directory or indirectly induce[d] the ... acts constituting the violation or cause of action" and are therefore liable under Section 20(a). In such circumstances, the directors and officers are therefore liable under Section 20(a) for the wrongdoings of the uninsured Piper employees. Thus, any liability faced by Piper as a corporate entity as a result of the actions of its uninsured employees controlled directly or indirectly by officers and directors is derivative of rather than independent of the liability faced by the insured officers and directors for those actions. *See Nordstrom,* 54 F.3d at 1433–1435.

■ This Court finds, however, that there exists a genuine issue of material fact as to the level of involvement of the officers and directors in the employee activities alleged by Defendants as giving rise to independent corporate liability. In *Nordstrom,* the court determined that "the allegedly misleading public disclosures, press releases, and statements to the press that constituted the fraud were all approved by one or more of the insured directors and officers ... and [plaintiff] has presented no evidence to indicate that ... any other ... [corporate] employee ... issued unauthorized statements that contributed to the fraud." *Nordstrom,* 54 F.3d at 1434. In contrast, the complaint in the present case sets forth that the insured officers and directors "control[led] the content of *various* reports and filings with the SEC and public statements issued by or on behalf of Piper Jaffray." *McDaid* Complaint at ¶ 9. This Court has found no further evidence offered to demonstrate the extent to which the insured officers and directors directly or indirectly controlled the wrongful actions of the Piper employees alleged in the underlying complaint in the present case. Thus, this Court finds that a genuine issue of material fact exists as to whether Piper faced independent liability under Rule 10b–5 as a result of actions realized by uninsured corporate employees. This Court further holds that in the event that it is determined that under Section 20(a) Piper faced independent liability, said liability is concurrent with that of the insured officers and directors, as no allegations were explicitly asserted solely against Piper as a corporate entity. Therefore, in allocation would only be appropriate under the larger settlement rule if Piper's concurrent liability is found to have increased the settlement amount. *See Nordstrom,* 54 F.3d at 1435 (citing *Caterpillar,* 864 F.Supp. at 857 (citation omitted)).

Defendants in the present case also argue that Piper as a corporate entity faced direct, independent corporate liability pursuant to Section 10(b) of the Securities Exchange Act and Securities and Exchange Commission Rule 10b–5 under a theory of "collective scienter." Defendants base their theory of collective scienter on language employed by *In re Warner*

*Communications Securities Litigation,* 618 F.Supp. 735, 752 (S.D.N.Y.1985):

> the requisite degree of scienter is likely to be easier to attribute to [the corporation] than to the individual defendants. As to [the corporation], plaintiffs arguably need only show either that one or more members of top management knew of material information indicating an earnings decline, but failed to stop the issuance of misleading statements or to correct prior statements that had become misleading, or that [corporate] management had recklessly failed to set up a procedure that insured the dissemination of correct information to the marketplace. In contrast, the scienter of each individual defendant would not be as easily shown. For each individual defendant, plaintiffs would have to establish that he traded and that each individual trade was made on the basis of material non-public information ... (citation omitted) Such offers of proof for each individual trade by each individual defendant would impose a more substantial burden than a similar showing of scienter as to [the corporation].

The language cited by Defendants was employed by *Warner,* however, in response to the objections of a member of the settlement class "to the fact that Warner rather than the individual defendants, is the source of most settlement funds" and "that the individual defendants, accused of insider trading, [did not] ... bear a much more substantial share of the settlement" than the corporate entity accused of fraud-on-the-market. *Id.* at 751–52. The *Warner* Court found the class member's objections "factually without foundation and legally without merit" because the degree of scienter required to prove allegations of fraud-on-the-market against the corporate defendant was significantly easier than that required to prove insider trading against individual defendants, where proof of both "intent to deceive, manipulate or defraud," *see Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47

L.Ed.2d 668 (1976), *and* an actual trade made on the basis of material non-public information is required. The *Warner* language cited by Defendants therefore merely makes the logical observation that it is more difficult to demonstrate scienter when the additional requirement of a trade made on the basis of material non-public information and does not introduce the possibility of collective scienter.

Similarly, Defendants also argue that the theory of collective scienter is supported by language in *Warner* asserting that "[t]he allegations against the individual defendants were included primarily to support the scienter allegation against Warner, through its officers. Warner's exposure is many times greater than that of the individual defendants." *Id.* at 753. This Court finds, however, that, as discussed above, the language cited by Defendants merely contrasts the liability faced by the corporate entity from the allegations of fraud-on-the-market and that faced by individual defendants from allegations of insider trading. Furthermore, the inclusion of allegations against individual defendants to support allegations of corporate scienter is simply a demonstration of the well-established principle that "a corporation ... must act through its agents," *See Caterpillar,* 62 F.3d at 963, and therefore also faces corporate liability arising from the actions of said agents.

■ Accordingly, this Court determines that the above-cited excerpts from *Warner* were taken out of context by Defendants to support a theory of collective scienter not intended by the court. This Court therefore finds that while "[t]heoretically, collective scienter could be a basis for liability," *Nordstrom,* 54 F.3d at 1435 (citing Knepper & Bailey, *supra,* § 1.02 (Supp. at 4)), "there is no case law supporting an independent 'collective scienter' theory." *Id.* Thus, any liability faced by Piper as a corporate entity under rule 10b–5 requires a demonstration that at least one agent of the corporation-an insured officer or director or an uninsured employee—pos-

sessed the requisite scienter. Therefore, to the extent that the corporate liability arises from the actions of individual officers and directors, Piper's liability is not independent of and merely concurrent with or derivative of the liability of the officers and directors. As discussed above, this Court has found that a genuine issue of material fact exists as to whether any independent corporate liability exists, arising from the actions of Piper's uninsured employees.

Accordingly, this Court denies Plaintiff's motion for declaratory judgment in the entire amount of losses incurred in the *McDaid* case on the limited grounds that there exists a genuine issue of material fact as to whether Piper as a corporate entity experienced joint but *independent* liability due to the actions of uninsured employees that increased the *McDaid* settlement costs.

### C. Defense Costs

■ *Nodaway* adopted the principle that "[s]o long as an item of service or expense is reasonably related to the defense of a covered claim, it may be apportioned wholly to the covered claim." *Nodaway*, 715 F.Supp. at 1465 (citing *Continental Casualty Company v. Board of Education of Charles County*, 302 Md. 516, 489 A.2d 536, 545 (1985); *see also, Id.* (citing *Harristown Development Corp. v. International Insurance Co.*, 1988 WL 123149 (M.D.Pa.) (concluding that "costs and expenses for items that were of use in defense of [a covered claim] are recoverable from [the insurer] even though they may have also been useful in defense of [an uncovered claim].")); *Safeway*, 64 F.3d at 1289 (holding that "[d]efense costs are .. covered by a D & O policy if they are reasonably related to the defense of the insured directors and officers, even though they may also have been useful in defense of the uninsured corporation."); *Raychem*, 853 F.Supp. at 1182 (holding that defense costs are covered by D & O policies if they are "reasonably related" to

the defense of the insured officers and directors even if the costs incurred may have also benefitted the defense of the uninsured corporate entity).

In *Nodaway*, the Eighth Circuit addressed the issue of allocation of defense costs between those incurred in defense of officers and directors and those incurred in defense of independent liability faced by an uninsured corporate entity as a result of actions by uninsured employees. Applying the "reasonably related" principle, the *Nodaway* court reduced the percentage of settlement and defense costs covered by D & O insurance by 10%—the same percentage of independent liability faced by the corporation.

■ Accordingly, this Court also applies the well-established "reasonably related" principle to the instant case and finds that to the extent that defense costs were related to the liability of the named individual officers and directors or the derivative or non-independent concurrent liability of the uninsured corporation due to acts of the insured officers and directors, the defense costs are covered by D & O insurance. To the extent that Piper as a corporate entity faced independent liability due to the actions of its uninsured employees, D & O coverage for attorneys fees and costs should be reduced. As set forth above, this Court finds that a genuine issue of material fact exists as to whether Piper faced independent corporate liability. Accordingly, this Court also finds that a genuine issue of material fact exists as to whether 100% of defense costs and fees incurred in the underlying *McDaid* action are covered by D & O insurance or whether allocation is appropriate between those claims "reasonably related" to the defense of officers and directors and those related to the defense of the corporation's independent liability. As this Court is unable to determine whether allocation of defense costs and fees is appropriate at this time, it find it premature to address the parties' conflicting assertions regarding the figure

representing the total costs and fees incurred in the underlying action.

### III. Endorsements 11 and 12

Piper asserts that the exceptions to Endorsements 11 and 12 of its 1993–94 and 1994–1996 National Union D & O Policies, incorporated by reference into its Reliance and ERSIC Excess Policies, provide for coverage of Piper's losses incurred in the *Gordon* and *Christian Fellowship* class actions. Endorsement 11 contains the Professional Services Exclusion and establishes that insurers will not cover losses sustained in connection with any claim against officers and directors "alleging, arising out of, based upon or attributable to the performance of professional services." Endorsement 12 establishes the Investment Services Exclusion, which provides that the insurers will not cover losses in connection with any claim against directors and officers based on the "[c]ompany's performance of professional services for others in the capacity of Investments Counselor, Mutual Fund Advisor and/or Underwriter/Broker Dealer." Both Endorsements 11 and 12 exempt from the Professional Services and Investment Services Exclusions "any derivative or shareholder class action claims against directors or officers alleging a failure to supervise those who performed or failed to perform such professional services."

In *Piper*, this Court determined that the claims at issue in the *Gordon* and *Christian Fellowship* actions "involve professional services excluded by the policy." *Id.* at 1156. It is undisputed, however, that *Gordon* and *Christian Fellowship* are shareholder class actions. Therefore, any losses from *Gordon* and *Christian Fellowship* "attributable to supervisory lapses" are excepted from the Professional Services and Investment Services Exclusions. *Piper*, 967 F.Supp. at 1159. The issue before this Court, therefore, is whether the claims asserted in the *Gordon* and *Christian Fellowship* actions contain allegations of "failure to supervise," thereby

qualifying for the exceptions to Endorsements 11 and 12. *See Piper*, 967 F.Supp. at 1156.

To determine whether the allegations in the relevant complaints trigger the exceptions to Endorsements 11 and 12, this Court must compare the allegations with insurance policy language. *Piper*, 967 F.Supp. at 1157; *See also, Ross v. Briggs and Morgan*, 540 N.W.2d 843, 847 (Minn. 1995). The underlying complaints, however, need not be pled in the language of the insuring document in order to be covered by the policy. *Ross v. Briggs and Morgan*, 540 N.W.2d at 848. This Court therefore must focus its analysis on the substance rather than form of the underlying allegations.

In *Piper*, this Court addressed Piper's claim that the exceptions to Endorsements 11 and 12 are applicable to the *Gordon* and *Christian Fellowship* class actions. The Court concluded that it was "skeptical that the underlying complaints are alleging [failure to supervise]" and that "there is little textual support for Piper's 'failure to supervise' view in the complaints themselves; nowhere are Piper's officers and directors charged with inadequate supervision of employees. Instead, the complaints are replete with specific allegations of the officers' own misconduct." *Piper*, 967 F.Supp. at 1158. This Court nonetheless gave "Piper the benefit of every ounce of doubt the Court can muster under Fed. R .Civ.P. 12(b)(6)" and declined to grant Defendants' motion to dismiss Piper's claims as barred by Endorsements 11 and 12. *Id.* The Court held, however, that Piper bears the burden "to demonstrate on a full record that its losses are in fact attributable to supervisory lapses, which is the only conduct excepted from the exclusions." *Id.* at 1158–1159 (citing *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 314 (Minn.1995)).

Piper now argues that while the underlying *Gordon* and *Christian Fellowship* complaints do not explicitly assert claims of failure to supervise, the allega-

tions of liability due to the "controlling person" status of the individual defendants are tantamount to allegations of "failure to supervise" and therefore fall under the exception to Endorsements 11 and 12. *See* Pl. Mem. Supp. Summ. J. at 10–13. Accordingly, Piper identifies "the real issue addressed by this motion ... [as] whether these highly placed individuals within the Piper organization faced potential liability in the underlying actions due to their status as supervisors." Pl. Mem. Opp. Summ. J. at 3.

This Court finds that Piper has misidentified the fundamental issue. The exception to Endorsements 11 and 12 requires that the underlying class action complaints contain allegations of failure to supervise or allegations comprised of elements legally equivalent to those required to establish a claim of failure to supervise.

In *Metge v. Baehler*, 762 F.2d 621 (8th Cir.1985) the Eighth Circuit detailed the applicable legal standard of a claim of "controlling person liability" and affirmed the district court's formulation of the controlling person test, which requires plaintiffs to establish that the defendant:

> actually participated in (i.e., exercised control over) the operations of the corporation in general; then he must prove that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated but he need not prove that this later power was exercised.

*Id.* at 631 (citing *Metge v. Baehler*, 577 F.Supp. 810, 817–18 (S.D.Iowa 1984)). In *Metge*, the Eighth Circuit adopted the district court's test, finding that the test "complies with precedents that distinguish between actual exercise of control in the violator's principal affairs and potential control over the violation" and is consistent with the principle set forth in *Myzel v. Fields*, 386 F.2d 718 (8th Cir.1967) that controlling person liability requires "some indirect means of discipline or influence less than actual direction." *Martin v. Shearson Lehman Hutton, Inc.*, 986 F.2d 242 (8th Cir.1993) (citing *Myzel*, 386 F.2d at 738).

In contrast with the aforementioned requirements for the establishment of a claim of controlling person liability, which is predicated principally on the status of the defendant as a controlling person and does not require direct control or influence over a violation, this Court held in *Piper* that a claim for failure to supervise requires that a corporate officer be "responsible for the torts of employees in which he participates, directs, or negligently fails to prevent." *Piper*, 967 F.Supp. at 1158; *see also, Morgan v. Eaton's Dude Ranch*, 307 Minn. 280, 239 N.W.2d 761, 763 (1976). Thus, the mere recitation of an individual's status, job title, or function is not sufficient to fulfill the requirements for a claim seeking to impose liability for failure to supervise.

Accordingly, this Court finds that while the underlying complaints in *Gordon* and *Christian Fellowship* may allege claims for controlling person liability, Piper has failed to carry its burden of demonstrating that a genuine issue of material fact exists as to whether its losses in *Gordon* and *Christian Fellowship* are in fact attributable to supervisory lapses tantamount to "failure to supervise." Therefore, Defendants' motion for summary judgment regarding Endorsements 11 and 12 is granted.

### IV. Endorsements 8 and 20 and Exclusion (g)

The following motions for summary judgment are also presently before this Court: (1) motion that the closed-end funds in question in the *Gordon* and *Christian Fellowship* cases are "mutual funds" for purposes of the D & O policies' Mutual Fund Exclusion, Endorsement 8, precluding coverage for the losses sustained by Piper in said lawsuits; (2) motion by Defendants National Union and ERSIC that Exclusion (g) and Endorsement 20 of the 1994–1996 National Union D & O Policies and the ERSIC Excess Policy preclude

coverage for the claims in *Christian Fellowship*.

This Court has determined that no genuine issue of material fact exists as to whether the claims in the *Gordon* and *Christian Fellowship* lawsuits arose from supervisory lapses and therefore has concluded that insurance coverage for costs incurred in the *Gordon* and *Christian Fellowship* actions is precluded by Endorsements 11 and 12. This Court therefore need not reach the issues addressed in the remaining motions by Defendants regarding Endorsements 8 and 20 and Exclusion (g), which ask the Court to find, on different grounds, that coverage for Piper's losses in the *Gordon* and *Christian Fellowship* cases should be denied.

## ORDER

Accordingly, based on the foregoing and all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

(1) Plaintiffs' motion for judgment in the amount necessary for full indemnification in the *McDaid* action is DENIED;

(2) Defendants' cross motion for summary judgment with respect to Endorsements 11 and 12 of the D & O policies is GRANTED;

(3) Plaintiffs' cross motion for summary judgment with respect to Endorsements 11 and 12 of the D & O policies is DENIED;

(4) Defendants' motion for summary judgment with respect to Endorsement 8 of the D & O policies is DENIED AS MOOT;

(5) Motion for summary judgment by Defendants National Union and ERSIC with respect to Exclusion (g) and Endorsement 20 of the 1994–1996 National Union D & O Policies and the ERSIC Excess Policy is DENIED AS MOOT.